272 N.J. Super. 384 (1994)
640 A.2d 298
KEITH CARROLL AND KATHY CARROLL, GUARDIANS AD LITEM FOR GREGORY CARROLL, AN INFANT, AND KEITH CARROLL AND KATHY CARROLL, INDIVIDUALLY, PLAINTIFFS,
v.
PHILIP BOYCE AND BARBARA BOYCE, DEFENDANTS, PHILIP BOYCE AND BARBARA BOYCE, PLAINTIFFS-APPELLANTS,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1994.
Decided April 12, 1994.
*385 Before Judges BRODY, STERN and KEEFE.
Linda B. Kenney argued the cause for appellants (Ms. Kenney attorney; Walter A. Lucas on the brief).
Randi S. Greenberg argued the cause for respondent (Robert A. Auerbach attorney; Ms. Greenberg of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
This appeal requires us to decide whether a homeowners' insurance policy issued to Philip and Barbara Boyce by Prudential Property and Casualty Insurance Company, covered injuries sustained *386 by plaintiff Gregory Carroll while Mrs. Boyce was babysitting for the child in her home. Mrs. Boyce was paid $85 per week by Gregory's parents (also plaintiffs) for her services. In the declaratory judgment action commenced by the Boyces when Prudential denied coverage, the carrier contends that as Mrs. Boyce was engaged in a "business pursuit," a policy exclusion applies. Plaintiffs, as assignees pursuant to a settlement of the Boyces' interest under their policy, contest application of the exclusion, but argue that even if it applies an exception to the exclusion relating to conduct "ordinarily incidental to non-business pursuits" requires coverage here. Judge Florence Peskoe held that the policy provides no coverage and granted summary judgment for the carrier. We affirm.
The Boyces' homeowners' policy reads, in pertinent part, as follows:
1. Coverage E  Personal Liability and Coverage F  Medical Payments to Others do not apply to bodily injury or property damage:
(a) which is expected or intended by the insured;
(b) arising out of business pursuits of any insured. ...
This exclusion does not apply to:
(1) activities which are ordinarily incident to non-business pursuits;
....
"Business" is defined to include "trade, profession or occupation."
To determine whether babysitting is encompassed within the "business pursuits" exclusion, two factors must be considered. The first is whether the pursuit involves "continuity, or customary engagement [by the insured] in the activity." The second involves whether the activity involves a "profit motive" or whether the insured engages in the pursuit "as a means of livelihood, a means of earning a living, [or] procuring subsistence or profit...." Sun Alliance Ins. Co. of Puerto Rico, Inc. v. Soto, 836 F.2d 834, 836 (3rd Cir.1988), citing Frankenmuth Mutual Ins. Co. v. Kompus, 135 Mich. App. 667, 354 N.W.2d 303 (Mich. App. 1984); State Farm Fire & Cas. Co. v. Drasin, 152 Cal. App.3d 864, 199 Cal. Rptr. 749 (Cal. App. 2 Dist., 1984); Camden Fire Ins. Ass'n v. Johnson, 170 W. Va. 313, 294 S.E.2d 116 (W. Va. 1982).
*387 It is undisputed that Mrs. Boyce was compensated an average of $85 per week from September 1986 through February 1987 to care for Gregory Carroll from 7:30 a.m. to 4:30 p.m., Monday through Friday. Gregory was between six and ten months old at the time. The "continuity" of Mrs. Boyce's work was clearly established. Plaintiffs contend, however, that "babysitting a single child in one's own home, as an accommodation to a neighbor and to provide a playmate for one's own child" is not a "business."[1] However, Mrs. Boyce also cared for another child for compensation during part of that period. In any event, while babysitting on a single occasion, or even occasionally, or without compensation generally does not involve a business pursuit (see Crane v. State Farm Fire & Cas. Co., 14 Cal. App.3d 727, 731, 92 Cal. Rptr. 621, 623 (Cal. App. 1 Dist., 1971), rev'd 5 Cal.3d 112, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971)), here the compensation was such as to render the exclusion applicable. See Stanley v. American Fire & Cas. Co., 361 So.2d 1030 (Ala. 1978) ($3.00 per day held to be sufficient compensation for "business pursuits" exclusion to apply). See generally Annot. "Construction and Application of `Business Pursuits' Exclusion Provision in General Liability Policy," 48 A.L.R.3d 1096, 1099-1102 (1973). "[W]e are not here dealing with a temporary or casual keeping of children, but rather with a more permanent [full-time] arrangement for an agreed upon compensation." Stanley, supra, 361 So.2d at 1031. Additionally, plaintiffs submitted no proof that the compensation was for anything but profit or income, or was all consumed by expenses.[2] Hence, the "business pursuit" exclusion applies. As the Supreme Court of Alabama concluded in Stanley:

*388 The term `babysitting' perhaps is inaptly used to describe the contract for day care for children involved here. In ordinary parlance, the `babysitter' is one employed as a matter of convenience by parents to stay with a child or children, so that they may for a few hours seek their pleasure, or tend to affairs external to the home. This differs from day-in, day-out child care for an indefinite period, as here.
`Business' in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood. While `business pursuit' in some contexts is synonymous with `business,' it more accurately denotes a continued, extended or prolonged course of business or occupation. Child care for compensation as evidenced in this case was much more than a casual accommodation, and was properly found to be a `business pursuit' under the terms of the policy exclusion. (Mansfield v. Hyde (1952) 112 Cal. App.2d 133, 137-138, 245 P.2d 577; Long v. City of Anaheim (1967) 255 Cal. App.2d 191, 197, 63 Cal. Rptr. 56; cf. Dorrell v. Norida Land & Timber Co. (1933) 53 Idaho 793, 27 P.2d 960, 963, reviewing definitions; Fadden v. Cambridge Mutual Fire Insurance Co. (Sup.Ct. 1966) 51 Misc.2d 858, 274 N.Y.S.2d 235, 241; Home Insurance Company v. Aurigemma (Sup.Ct. 1965) 45 Misc.2d 875, 257 N.Y.S.2d 980, 985. These New York trial court cases involve the same exclusionary clause here considered.)
[Stanley, supra, 361 So.2d at 1032, quoting from the California Court of Appeals in Crane v. State Farm and Cas. Co., 14 Cal. App.3d 727, 92 Cal. Rptr. 621, 622-23 (Ct.App. 1 Dist., 1971), rev'd 5 Cal.3d 112, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971).]
Plaintiffs insist, however, that even if the exclusion applies, this case is subject to the exception for "activity ordinarily incident to non-business pursuits." We disagree. In N.J. Property Liability Guaranty Assoc. v. Brown, 174 N.J. Super. 629, 632, 417 A.2d 117 (App.Div.), certif. denied 85 N.J. 462, 427 A.2d 561 (1980), we considered application of the exception to the accidental shooting of an insured's social friend at the insured's office. We held the exception applied, stating:
[The exclusionary clause] may fairly be read as saying that, as a general proposition, there will be no liability coverage with respect to an insured's "business pursuits," but that, as an exception to this broad rule, coverage will be extended to liability which arises, even though connected in some causal manner with the insured's "business purposes," out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits. In other words, to give any meaning at all to the excepting clause, the policy must be read to extend *389 coverage to certain acts or omissions which are not, by their very nature, tainted by being associated with an insured's business pursuits, but which, nevertheless, with respect to the insured's potential liability arising therefrom, may have been causally related to such business pursuits.
[Brown, supra, 174 N.J. Super. at 633, 417 A.2d 117, quoting Gulf Ins. Co. v. Tilley, 280 F. Supp. 60, 64-65 (N.D.Ind. 1967) aff'd 393 F.2d 119 (7th Cir.1968).][3]
Here, plaintiffs allege that Gregory suffered serious injuries resulting either from negligent supervision or intentional wrongdoing. For purposes of the declaratory judgment, of course, "an insurer's duty to defend an action against [an] insured is measured by the allegations contained in the complainant's pleadings." Salem Group v. Oliver, 248 N.J. Super. 265, 271, 590 A.2d 1194 (App.Div. 1991), aff'd o.b. 128 N.J. 1, 607 A.2d 138 (1992).[4] We conclude that the exception is inapplicable under either theory advanced in the complaint filed against the Boyces.
In Stanley, a one-year old child was injured when she fell into a bed of hot coals in the insureds' home fireplace while the insured was caring for her and receiving $3.00 per day for so doing. The insured was in the kitchen cooking lunch at the time, and the policy contained the same exclusion and exception with which we deal. Despite the small amount of pay the insured received and the fact Ms. Stanley was preparing food for her family at the time of the accident, the Stanley court concluded that the exclusion applied and the exception did not, stating:
In Tilley, the exclusionary clause was held inoperative where baby care was furnished for consideration, and the baby sustained burns when she overturned a coffee percolator. The district trial court assumed that the child care was a business pursuit, but characterized insured's coffee brewing for herself and a guest as an activity not connected with baby care, thus ordinarily incident to non-business pursuits. This analysis is questionable. The baby was burned because of *390 the condition on the premises, and the baby's own activity. The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is a failure to supervise rather than making coffee for a third party. Undertaking the business relation of child care for compensation is certainly not ordinarily incident to the conduct of a household.
[Stanley, supra, 361 So.2d at 1031-32.]
Stated differently,
The activity referred to is not preparing lunch, which would ordinarily be incident to a non-business pursuit, but rather to the failure to properly supervise a young child. Supervising children on a regular basis for compensation is ordinarily a business pursuit.
[Stanley, supra, 361 So.2d at 1032-33.]
See also Annot. supra, 48 A.L.R.3d at 1107-08.
We agree and apply the Stanley rationale which embodies the majority, and better considered, view. See U.S. Fidelity & Guar. Co. v. Heltsley, 733 F. Supp. 1418 (D.Kan. 1990); Rocky Mountain Cas. Co. v. St. Martin, 60 Wash. App. 5, 802 P.2d 144 (Wash. App. 1990), review denied 116 Wash.2d 1026, 812 P.2d 102 (1991); Farmers Ins. Co. of Arizona v. Wiechnick, 166 Ariz. 266, 801 P.2d 501 (Ariz. App. 1990); Heinson v. Porter, 244 Kan. 667, 772 P.2d 778 (Kan. 1989); Susnik By and Through Susnik v. Western Indem. Co., Inc., 14 Kan. App.2d 421, 795 P.2d 71 (Kan. App. 1989); McCloskey v. Republic Ins. Co., 80 Md. App. 19, 559 A.2d 385 (Md. App.), cert. denied 317 Md. 640, 566 A.2d 101 (Md. 1989); Moncivais v. Farm Bureau Mut. Ins. Co., 430 N.W.2d 438 (Iowa 1988); Haley v. Allstate Ins. Co., 129 N.H. 512, 529 A.2d 394 (N.H. 1987); Republic Ins. Co. v. Piper, 517 F. Supp. 1103 (D.Colo. 1981).
As Mrs. Boyce was engaged in a permanent babysitting arrangement for an agreed upon compensation, she was clearly involved in a "business pursuit." The very purpose of her business was to care for the infant and to protect him from the dangers of injury. As such, we cannot conclude that a babysitter's conduct in failing to do so can be considered incident to her non-business pursuits, irrespective of what Mrs. Boyce was doing at *391 the time and how the injuries occurred. See e.g., McCloskey v. Republic Ins. Co., supra, 559 A.2d at 390. The injuries resulted from Mrs. Boyce's failure to adequately discharge her business pursuit. Therefore, the policy exclusion applies and the exception to the exclusion must be deemed inapplicable.
The declaratory judgment for the carrier is affirmed.
NOTES
[1] Given our conclusion we do not have to develop the age disparity between Gregory and Ms. Boyce's children or question whether an infant Gregory's age can be considered a "playmate."
[2] Plaintiffs suggest that the carrier must prove the profit or profit motive. But given the personal nature of the relevant facts, we disagree. While carriers generally have the burden of proving an exclusion, plaintiffs are more readily able to come forward to show there was no profit or profit motive. See Biunno, Current N.J. Rules of Evidence, comment on N.J.R.E. 101(b)(2); J.E. on Behalf of G.E. v. State, Dept. of Human Services, Div. of Developmental Disabilities, 131 N.J. 552, 569-70, 622 A.2d 227 (1993) ("the party with greater expertise and access to relevant information should bear [the] evidentiary burdens").
[3] In Stanley, the Supreme Court of Alabama rejected the application of Tilley which held the exclusionary clause inoperative where the child had been burned when she overturned a coffee percolator. Stanley, supra, 361 So.2d at 1031. Stanley also rejected the California Supreme Court's reversal of Crane by holding the "non business pursuit" exception applicable.
[4] Given the nature of the pleadings concerning negligent supervision, no issue is addressed to exclusion (a) regarding intended acts.