704 A.2d 597

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF–APPELLANT, v. JAMES BOYLAN, LINDA BOYLAN, RYAN BOYLAN, MINNIE HZ, AN INFANT BY HER PARENTS AND NATURAL GUARD-IANS ROGER HZ AND EDNA HZ, AND ROGER HZ AND EDNA HZ,[1] INDIVIDUALLY, DEFENDANTS–RESPONDENTS.

[1] We have used fictitious names for the infant victim and her parents.

MINNIE HZ, AN INFANT BY HER PARENT AND NATURAL GUARDIAN, ROGER HZ, AND ROGER HZ INDIVIDUALLY AND EDNA HZ, PLAINTIFFS, v. JAMES BOYLAN, LINDA BOYLAN AND RYAN BOYLAN DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1997—Decided January 22, 1998.

Before Judges PETRELLA, SKILLMAN and EICHEN.

*Richard L. Marcickiewicz*, argued the cause for appellant (*Sears, Sweeney & Marcickiewicz*, attorneys; *Mr. Marcickiewicz*, of counsel and on the brief).

*Andrew A. Gioia*, argued the cause for respondents Minnie Hz, Roger Hz, and Edna Hz.

*David J. Marx, Jr.*, argued the cause for respondents James and Linda Boylan.

No brief was filed on behalf of respondent Ryan Boylan.

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Prudential Property and Casualty Insurance Company (Prudential) appeals [2] from the denial of its motion for summary judgment which sought a declaration that it was not obligated to indemnify

---

[2] The appeal filed is only from one of two consolidated cases, *i.e.*, the subsequently filed declaratory judgment action in connection with the underlying tort case. The declaratory judgment case brought by Prudential on September 7, 1995, was consolidated on January 2, 1996, with the underlying tort case filed on June 4, 1993. After orders were entered in the declaratory judgment action resolving the insurance issues at the trial level, Prudential filed a notice of appeal on June 27, 1996, captioned in both matters. Technically, the appeal was interlocutory without leave granted because the matters were never severed and the tort action was not yet resolved. The matter was not then final as to all parties and all issues. *See R.* 2:2–3(a)(1). We *sua sponte* grant leave to appeal in view of the elapsed time and in the interest of judicial economy, thus bypassing issues on the effect of the subsequent tort judgment.

or defend the Boylan defendants under their homeowner's insurance policy against claims asserted by the Hz's that the Boylans' fifteen year old son Ryan had sexually assaulted their five year old daughter while he was babysitting for them. Prudential also appeals the grant of the Boylans' cross-motion for summary judgment declaring that Prudential's policy of insurance afforded coverage for the claims of the Hz's, as well as the denial of its motion for an order for release of the juvenile records of Ryan and the order granting counsel fees to the Boylans.

The motion judge ruled that Prudential's homeowners policy provided coverage to James and Linda Boylan and that the policy's business pursuits exception did not apply because this was a "one-time only, casual accommodation to babysit in an emergency." The judge also ruled that the insurance policy covered fifteen year old Ryan Boylan as a matter of law because he was deemed to lack the requisite intent or mental capacity to understand the nature of his acts. There was no evidentiary hearing on that issue. Although Ryan entered a guilty plea in the juvenile proceeding in the Family Part, the judge denied Prudential's application to have access to Ryan Boylan's juvenile court records. Finally, the judge denied Prudential's request to stay the trial pending this appeal [3].

On June 26, 1992, Mr. and Mrs. Hz were invited to a surprise party and arranged for their five year old daughter and her little brother to be watched by a babysitter. Mrs. Hz testified that when her babysitter had an emergency and had to leave she called

---

[3] Prior to trial the Hz's agreed to give up their right to recover against the Boylans if the Boylans would not defend their case and assigned their rights against Prudential to the Hz's. The matter was tried in September 1996 without a jury and resulted in a judgement in favor of the plaintiffs for $394,125.00 plus prejudgment interest. The case was apparently tried against Ryan's parents on negligent supervision type claims. No percentage allocation of fault was made. No appeal was taken from the monetary judgment or the finding that the record supported negligence type claims against the parents. We recognize that further proceedings in the Law Division may be required on allocation of fault, if the parties do not come to some agreement.

the Boylan house and Ryan Boylan told her that his mother was not home, although apparently his father was. Then Mrs. Hz contacted Mrs. Boylan at work to arrange for babysitting for the balance of that evening. Mrs. Hz testified that Mrs. Boylan told her to bring her children to the Boylans' house and Ryan would watch them until she came home about an hour later. Mrs. Hz took Minnie and her little brother to the Boylans' house.

After Minnie, her brother and the Boylan children played some games they went upstairs to go to bed. Minnie was taken to a bedroom to go to sleep, but Ryan Boylan thereafter had the five year old girl perform an act of oral sex on him. Ryan Boylan admitted in subsequent juvenile court proceedings to sexually molesting the girl.

Mrs. Hz testified that prior to June 1992, Mrs. Boylan quite frequently had provided babysitting services for the Hz children at a fee. Mrs. Boylan was Minnie's primary child care source, spending up to eight hours a day with her since she was six or seven months old.

However, Mrs. Hz testified that on this particular occasion Mrs. Boylan was watching her children "as a favor" because of the emergency. Although Mrs. Boylan did not ask for any compensation either before or after watching the Hz children, Mrs. Hz gave Mrs. Boylan $28 to split between herself and Ryan.

## I.

We employ the same standard that governs trial courts in reviewing summary judgment orders. *Antheunisse v. Tiffany & Co., Inc.*, 229 *N.J.Super.* 399, 402, 551 *A.*2d 1006 (App.Div.1988), *certif. denied*, 115 *N.J.* 59, 556 *A.*2d 1206 (1989). See *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 539–540, 666 *A.*2d 146 (1995). Thus, the movant must show that there does not exist a "genuine issue" as to a material fact and not simply one "of an insubstantial nature"; a non-movant will be unsuccessful "merely by pointing to *any* fact in dispute." *Id.* at 529–530, 666 *A.*2d 146.

 Prudential's homeowner's policy contains the following exclusion:

Exclusions

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured ...

Defendants argue that we should declare the law in New Jersey to be that in cases where a minor sexually abuses a much younger child it is the minor's subjective intent that should apply, rather than the objective intent standard that would apply to adults. Accordingly, the Hz's (as well as the Boylans) suggest that Ryan did not act intentionally, and therefore, the homeowner's insurance provides coverage for claims of negligence against the minor as well as against the parents arising out of the incident.

Although there may be some basis for considering a minor's subjective intent in other areas of the law involving negligence by minors with respect to sporting events and the like, or where the minors are friends and of the same relative age, we reject the subjective intent argument here. Whether or not *N.J.S.A.* 2C:4-11a(1) creates a presumption of maturity for an individual over the age of fourteen, it is manifest that this fifteen year old boy knew what he was doing to this five year old girl.

The record is adequate to demonstrate that Ryan, under any standard, did what he did intentionally, and hence, there is no insurance coverage as to him.

Under *N.J.S.A.* 2C:4-11, an individual of fourteen and above is presumed capable of understanding that he committed a wrong. That the victim's pleadings in a civil case contained counts that sounded in negligence, even if in an attempt to implicate insurance coverage, does nothing to change the result here. The acts were clearly intentional. *Brill v. Guardian Life Ins. Co. of America, supra,* 142 *N.J.* 520, 666 *A.*2d 146.

 We reject any argument that a purported exception in *Atlantic Employers Ins. Co. v. Tots & Toddlers Pre–School Day Care Center, Inc.,* 239 *N.J.Super.* 276, 283, 571 *A.*2d 300 (App.

Div.), *certif. denied*, 122 *N.J.* 147, 584 *A.*2d 218 (1990), would somehow excuse Ryan as "mentally incapacitated" because he was fourteen or fifteen years of age. As noted in *Atlantic Employers*, it is not necessary to a determination of coverage that the assured be charged with or convicted of any offense before a penal law exclusion or an intentional act exclusion can be applied. *Id.* at 282, 571 *A.*2d 300. The focus of the inquiry in deciding if there is a covered occurrence is whether the insured "expected or intended" the injury, not the act which caused the injury. *Voorhees v. Preferred Mutual Ins. Co.*, 128 *N.J.* 165, 183, 607 *A.*2d 1255 (1992). Indeed, where, as here, the actions are "particularly reprehensible," an intent to injure can be presumed from the act without an inquiry into the actor's subjective intent. *Id.* at 184, 607 *A.*2d 1255. In our view, under the *Atlantic Employers* case, as well as *Voorhees, supra*, 128 *N.J.* 165, 607 *A.*2d 1255, reversal as to coverage for Ryan Boylan is mandated.

We are not persuaded by cases which rely on subjective intent reasoning, such as *Allstate Ins. Co. v. Patterson*, 904 *F.Supp.* 1270, 1280–1283 (D.Utah 1995). In that case, which is clearly distinguishable, the oldest of the three older boys was accused of sexually abusing two younger boys not yet fourteen years of age. All of the boys were friends. The Utah statute provided a presumption that those fourteen and older had the same capacity as adults to understand the consequences of their actions. *Id.* at 1285. The *Patterson* court stated that it was not determining that there was coverage, only that there was a "possibility of coverage for the acts of the juvenile insureds (slim though it may be)." *Id.* at 1287.

It is clear that what occurred here was neither negligent nor accidental. Accordingly, there is no coverage for Ryan under the homeowner's policy. *See S.L. Industries v. American Motorists Ins. Co.*, 128 *N.J.* 188, 212, 607 *A.*2d 1266 (1992); *Voorhees, supra*, 128 *N.J.* at 184, 607 *A.*2d 1255.

In summary, the trial court erred in granting summary judgement to Ryan Boylan. As a matter of law, Ryan Boylan, age 15,

intended to injure Minnie Hz when he sexually molested her, and therefore, is excluded from coverage under the homeowner's insurance policy.

## II.

■ We turn next to whether Prudential's policy provides coverage to the parents of the minor here. Clearly, no "expected or intended act" of the parents has been asserted. Hence, no bar to coverage would arise on that basis and the policy exclusion, quoted in Point I, does not apply. The allegations against the Boylans, which bring into focus the policy provisions, *The Ohio Cas. Ins. Co. v. Flanagin,* 44 *N.J.* 504, 512, 210 *A.*2d 221 (1965); *Storms Realty Co., Inc. v. New Amsterdam Cas. Co.,* 110 *N.J.L.* 538, 540, 166 *A.* 162 (E. & A.1933), are essentially negligence based, including negligent supervision. *See, e.g., Property Cas. Co. of MCA v. Conway,* 147 *N.J.* 322, 330, 687 *A.*2d 729 (1997).

■ The exclusion in Boylan's homeowner policy as to this point reads in pertinent part:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage . . .

 b. arising out of business pursuits of the insured . . .

This exclusion does not apply to:

 (1) activities which are ordinarily incident to non-business pursuits . . .

Prudential argues that Mr. and Mrs. Boylan's activities constituted a "business pursuit" and therefore the homeowner's insurance policy does not provide coverage. Alternatively, Prudential argues that providing babysitting services for the Hz children was not an "activit[y] which [is] ordinarily incident to non-business pursuits." The respondents counter that on the night in question, there was no "business pursuit" because the Boylans were asked to babysit for emergency reasons.

The motion judge concluded that the "business pursuit" exception did not apply because the activity here was a "one time only, casual accommodation to baby sit in an emergency." The judge said this babysitting request was outside of the normal business

hours and concluded that this instance was not within the business pursuit provision because the Hz's were attending a party, the babysitter had an emergency and had to leave and Mrs. Boylan agreed to have Ryan babysit as a favor for the Hz's.

In *Carroll v. Boyce*, 272 *N.J.Super.* 384, 389, 640 *A.*2d 298 (App.Div.1994), we concluded that a permanent babysitting job was a "business pursuit" and the exception to the insurance exclusion did not apply. In *Carroll*, it was undisputed that Mrs. Boyce was compensated at the rate of $85 a week for about 5 months to care for Gregory Carroll from 7:30 a.m to 4:30 p.m., Monday through Friday. Plaintiffs alleged that Gregory suffered serious injuries from either negligent supervision or intentional wrongdoing. The Boyce's homeowner's insurer denied coverage on the grounds that the Boyces were engaged in a "business pursuit." The Carrolls argued that even if the "business pursuit" exemption applied, an exception to the exclusion relating to conduct "ordinarily incidental to non-business pursuits" required coverage. *Id.* at 386, 640 *A.*2d 298. We indicated that in order to determine whether babysitting was encompassed within the business pursuits exclusion, the court must consider (1) whether the pursuit involves "continuity, or customary engagement [by the insured] in the activity;" and (2) whether the activity involves a "profit motive" or whether the insured engages in the pursuit "as a means of livelihood, a means of earning a living, [or] procuring subsistence or profit. . . ." *Ibid.* (citations omitted).

We noted that "while babysitting on a single occasion, or even occasionally, or without compensation generally does not involve a business pursuit . . . the compensation [in *Carroll* ] was such as to render the exclusion applicable." *Id.* at 387, 640 *A.*2d 298 (citations omitted). Since the babysitting arrangement was not casual or temporary, the business pursuit exclusion applied. *Ibid.* (citing *Stanley v. American Fire & Cas. Co.,* 361 *So.*2d 1030 (Ala.1978)).

*Carroll* also held that the exception for "activity ordinarily incident to non-business pursuits" did not apply. *Id.* at 388, 640 *A.*2d 298 (citing *New Jersey Property Liability Guaranty Ass'n v.*

*Brown,* 174 *N.J.Super.* 629, 632, 417 *A.*2d 117, (App.Div.), *certif. denied,* 85 *N.J.* 462, 427 *A.*2d 561 (1980)). We concluded that the very purpose of babysitting was to protect the child from harm and therefore a babysitter's failure to do so could not be considered conduct incident to non-business pursuits. *Id.* at 390, 640 *A.*2d 298.

In *Stanley, supra,* 361 *So.*2d at 1031, Mrs. Stanley cared for eight different children, but no more than five at one time in her home for several months. She received three dollars per day per child as compensation. While Mrs. Stanley was in her kitchen preparing lunch for herself, her children and the other children, Alicia Schofield, just over one year old, fell on hot coals in the Stanley fireplace. The homeowner's insurance policy excluded injury arising out of "business pursuits" except activities which were ordinarily incident to non-business pursuits. *Id.* at 1032. The Alabama Supreme Court held that the babysitting involved was a business pursuit because it was not casual babysitting. It was not "a temporary arrangement for an hour, a day or an evening, for the convenience of the parents." *Id.* at 1033 (citing *Crane v. State Farm Fire and Cas. Co.,* 5 *Cal.*3d 112, 95 *Cal.Rptr.* 513, 485 *P.*2d 1129 (1971)). Nor did the injury in *Stanley* arise out of an activity which was ordinarily incident to a non-business pursuit. "The activity referred to is not preparing lunch, which would ordinarily be incident to a non-business pursuit, but rather to the failure to properly supervise a young child." *Id.* at 1033. *See also Camden Fire Ins. Ass'n v. Johnson,* 170 *W.Va.* 313, 294 *S.E.*2d 116 (1982); *Nationwide Mutual Fire Ins. Co. v. Collins,* 136 *Ga.App.* 671, 222 *S.E.*2d 828 (1975).

Prudential asserts that many jurisdictions have found that babysitting on an ongoing basis in one's home constitutes a business pursuit. *Rocky Mountain Cas. Co. v. St. Martin,* 60 *Wash.App.* 5, 802 *P.*2d 144 (1990) *review denied* 116 *Wash.*2d 1026, 812 *P.*2d 102 (1991) (insured provided child care for four children); *Farmers Ins. Co. of Arizona v. Wiechnick,* 166 *Ariz.* 266, 801 *P.*2d 501 (App.1990) (insured operated babysitting service); *Landis v.*

*Allstate Ins. Co.*, 546 *So.*2d 1051 (Fla.1989) (insured operated a licensed day care center); *Safeco Ins. Co. v. Howard*, 782 *S.W.*2d 658 (Mo.App.1989) (insured operated babysitting service for ten years); *Susnik v. Western Indem. Co. Inc.*, 14 *Kan.App.*2d 421, 795 *P.*2d 71 (1989) (insured listed child care business on tax return); *Heinson v. Porter*, 244 *Kan.* 667, 772 *P.*2d 778 (1989) (insured operated babysitting service); *McCloskey v. Republic Ins. Co.*, 80 *Md.App.* 19, 559 *A.*2d 385, *cert. denied* 317 *Md.* 640, 566 *A.*2d 101 (1989) (insured receiving $25 to $40 weekly per child for seven children); *Moncivais v. Farm Bureau Mut. Ins. Co.*, 430 *N.W.*2d 438 (Iowa 1988) (insured provided child care services for seven children for fifteen years); *Haley v. Allstate Ins. Co.*, 129 *N.H.* 512, 529 *A.*2d 394 (1987) (insured was licensed day care provider and offered services eight hours per day, five days per week); *Allstate Ins. Co. v. Kelsey*, 67 *Or.App.* 349, 678 *P.*2d 748, *review denied* 297 *Or.* 227, 683 *P.*2d 91 (insured advertised babysitting services and received compensation); *Republic Ins. Co. v. Piper*, 517 *F.Supp.* 1103 (D.Colo.1981) (insured was licensed babysitter and claimed $777 in business expenses on tax return for babysitting services); *American Family Ins. Co. v. Dewald*, 597 *F.*2d 1148 (8th Cir.1979) (insured paid $1 an hour to babysit and hours varied week by week); *Robinson v. Utica Mutual Ins. Co.*, 585 *S.W.*2d 593 (Tenn.1979) (insured charged $13 per week per child and advertised child care services); *Peterson v. Highlands Ins. Co.*, 328 *So.*2d 49 (Fla.App.1976) (insured running a nursery or babysitting service at time of injury).

However, in all of these cases it is clear that the policyholder was operating a day care or babysitting service when the child in the insured's care was injured. Here, the facts indicate otherwise. Although the facts suggest that Mrs. Boylan may well have been operating a babysitting service (as a business) prior to June 1992, the particular request for babysitting services in this instance did not arise in that context.

Furthermore, the babysitting services Mrs. Boylan provided on a regular basis for the Hz children were not of the same nature as

the night in dispute. On this particular evening, Mrs. Boylan was not even at home when Mrs. Hz brought her children to the Boylan home. In addition, there was no previously bargained-for fee, no pre-arrangements for pick up and the length of time was only a couple of hours.

We affirm the motion judge's ruling that under the circumstances Mrs. Boylan was not engaged in a "business pursuit" at the time of the injury, and therefore, Prudential's homeowners policy provides coverage to the parents for negligence based claims.[4] While it may be that if Minnie Hz was injured while Mrs. Boylan was watching her under the previous arrangement between the Boylans and the Hz's, Prudential's policy would not provide coverage, this particular incident arose separate from that agreement. It is undisputed in the record that Mrs. Boylan agreed to babysit for the Hz children as a last minute effort to help out Mrs. Hz. As noted, there was no agreement for compensation, and nothing in the record indicates that this "last minute emergency" service was a customary service provided by Mrs. Boylan. *Carroll, supra,* 272 *N.J.Super.* at 386, 640 *A.*2d 298. This was merely a temporary arrangement for the convenience of the parents. *Stanley, supra,* 361 *So.*2d at 1033.

### III.

Prudential acknowledges that its obligation to pay counsel fees pursuant to the court's order is dependent upon the Boylans being successful in this appeal.

*Rule* 4:42–9(a)(6) provides that fees for legal services are allowed "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." *See also Rule* 2:11–4. Prudential concedes that "where an insurer improperly refuses to defend, the insured can, in a subsequent action on the policy, recover the costs including counsel fees incurred by him in having

---

4 No other challenge to insurance coverage was presented on this appeal.

had to provide his own defense." In *Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 356, 634 *A.*2d 74 (1993), the Court stated that the policy underlying *Rule* 4:42–9(a)(6) is "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." *See Guarantee Ins. Co. v. Saltman,* 217 *N.J.Super.* 604, 610, 526 *A.*2d 731 (App.Div.1987); *N.J. Manufacturers Ins. Co. v. Consolidated Mut. Ins. Co.,* 124 *N.J.Super.* 598, 602, 308 *A.*2d 76 (Law Div.1973).

The judge entered an order on August 2, 1996 granting counsel fees to the Boylans. A second order of even date granted counsel fees to Ryan's attorneys. At oral argument it was stated that there is no challenge as to amount of the fees ordered by the Law Division. Prudential concedes its obligation to pay counsel fees is contingent upon the determination of this appeal. In light of our decision we uphold the award of counsel fees to the parents, but reverse the order awarding counsel fees as to Ryan.

## IV.

Prudential also argues that Ryan Boylan's juvenile file should have been disclosed in order to determine his capacity to understand the nature of his act. See *N.J.S.A.* 2A:4A–60; *State v. Allen,* 70 *N.J.* 474, 483, 361 *A.*2d 5 (1976). In light of our decision we need not reach this issue.

Reversed as to defendant Ryan Boylan; affirmed as to defendants James and Linda Boylan.