**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5000-17T2

BAHMAN VOJDANI, D.M.D.,
COMPREHENSIVE DENTAL OF
LINCOLN PARK LLC, GERALD
S. CONVISSAR, D.D.S., P.A.,
JOSEPH W. WOLENSKI, D.M.D.,
P.A., DAN C. PULLEN, D.D.S.,
P.A., and SAMIR RANA, D.M.D.,

     Plaintiffs-Appellants,

v.

AETNA LIFE INSURANCE
COMPANY,

     Defendant-Respondent.

_____

> Argued March 12, 2019 – Decided April 29, 2019
>
> Before Judges Yannotti, Rothstadt and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0741-17.
>
> Arthur C. Meisel argued the cause for appellants.

Paul D. Kelly argued the cause for respondent (Craig, Annin & Baxter, LLP, attorneys; Paul D. Kelly, on the brief).

PER CURIAM

Plaintiffs Dr. Bahman Vojdani, Comprehensive Dental of Lincoln Park, LLC (CD), Dr. Gerald S. Convissar, Dr. Joseph W. Wolenski, Dr. Dan C. Pullen, and Dr. Samir Rana appeal from orders entered by the trial court on May 23, 2018, which granted summary judgment in favor of defendant Aetna Life Insurance Company (Aetna), and denied plaintiffs' motion for leave to file an amended complaint. We affirm.

We briefly summarize the relevant facts, which are drawn from the record before the trial court. Plaintiffs are individuals who practice dentistry in New Jersey. In April 2015, Dr. Vojdani submitted to Aetna a request for benefits in the amount of $6400 for orthodontic services he provided to A.J.M., who had been a dependent enrollee under a self-funded, dental-benefits plan.

In April 2015, Aetna made an initial payment to Dr. Vojdani of $800, and thereafter issued payments totaling $1010.46, for services deemed to have been provided in April through November 2015. In April 2016, A.J.M. informed Aetna that she had not seen Dr. Vojdani since June 2015; however, Dr. Vojdani advised Aetna that he last treated A.J.M. in August 2015. In May 2016, Aetna

2

made requests to Dr. Vojdani to recover benefits paid to him totaling $480. Dr. Vojdani did not respond to Aetna's requests. Thereafter, Aetna recovered $480 it paid on the claims.

Dr. Rana practices dentistry through CD, which submitted claims to Aetna for services provided to A.A. from May 2016 to June 2016. A.A. had been enrolled as a dependent beneficiary in a group benefits plan for which Aetna served as claims administrator. Aetna paid CD $7612.40 on the claims. After Aetna made these payments, it determined that A.A. was not an eligible enrollee in the plan as of May 21, 2016. In September 2016, Aetna issued a request to CD for the return of the payments made for services provided to A.A., but CD did not respond to the request. Aetna thereafter recovered overpayments totaling $6084.40.

Dr. Convissar submitted a request for benefits to Aetna in the amount of $189 for services he provided in December 2015 to K.M., who had been enrolled in a fully-insured benefits plan. Aetna paid Dr. Convissar $149 on the claim, but later determined that K.M. was not eligible for benefits when the services were provided. In February 2017, Aetna requested that Dr. Convissar return the payment, but received no response. In May 2017, Aetna recovered $149.

 A-5000-17T2

In addition, Dr. Wolenski submitted a claim for benefits to Aetna for services he provided in November 2015 to A.C., who had been enrolled in a fully-insured benefits plan. Aetna paid Dr. Wolenski $241 on the claim. After Aetna made the payment, it determined that A.C. was not eligible for benefits under the plan when Dr. Wolenski provided the services. In February 2017, Aetna requested repayment, but Dr. Wolenski did not respond to the request. Thereafter, Aetna recovered the $241 it paid to Dr. Wolenski.

Dr. Pullen submitted a claim for benefits to Aetna for services he provided in October 2016 to K.P., who had been a dependent enrollee in an insured group benefit plan. Aetna paid Dr. Pullen $179 on the claim. After Aetna made the payment, it learned that K.P. was not eligible for benefits when Dr. Pullen provided the services. Aetna requested repayment, but Dr. Pullen did not respond to the request. Aetna thereafter recovered the $179 it paid on the claim.

In June 2017, plaintiffs filed a complaint in which they alleged that Aetna had wrongfully recovered the payments it made on the submitted claims by offsetting the amounts paid against future claims submitted by plaintiffs for services provided to other patients. Plaintiffs sought, among other relief, the return of the monies recovered on the claims from Dr. Vojdani and CD. They also sought a declaration that Aetna could not recover the amounts paid on

4

claims submitted after coverage for the patients was terminated. Aetna filed its answer in July 2017, in which it asserted, among other things, that plaintiffs were not entitled to any relief on their complaint.

In March 2018, following the completion of discovery, the parties filed motions for summary judgment. Plaintiffs also sought leave to amend their complaint to add new claims regarding two other dentists. In May 2018, the judge heard oral argument and thereafter placed his decision on the record.

The judge decided that the material facts were not in dispute, and Aetna was entitled to judgment as a matter of law. The judge found that Aetna's reimbursements of its payments were expressly authorized by the Health Claims Authorization, Processing and Payment Act (HCAPPA), specifically, N.J.S.A. 17B:27-44.2(d), the section of HCAPPA which applies to health insurers. The judge also decided that plaintiffs would not be permitted to amend their complaint, because "it would not have any effect on the [c]ourt's [d]ecision."

The judge memorialized his decision in orders dated May 23, 2018, which granted Aetna's motion for summary judgment, and denied plaintiffs' motions to amend their complaint and for summary judgment. This appeal followed.

On appeal, plaintiffs argue that: (1) the overpayment recovery provisions in HCAPPA do not apply to "stand-alone" or "dental-only" benefit plans; (2) the

overpayment reimbursement provisions in HCAPPA do not apply to benefits paid to persons who were not covered on the date of service; (3) HCAPPA does not empower a payer to effect an overpayment reimbursement for covered services and thereafter inform the covered person that it has no obligation to pay the provider; (4) Aetna's payments to plaintiffs are not recoverable under the law of restitution or by self-help recoupment; and (5) if the trial court's orders on the summary judgment motions are reversed, plaintiffs should be permitted to amend their complaint.

When reviewing a trial court's order granting summary judgment, we apply the same standard that the trial court applies when ruling on a summary judgment motion. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Therefore, we must consider whether there are any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Here, the material facts are not in dispute.

As noted, plaintiffs argue that the overpayment recovery provisions in HCAPPA do not authorize Aetna to recover benefits paid on "stand-alone" or "dental-only" plans. We reject that argument for the reasons stated in our opinion filed this day in In re Adoption of Amendments to N.J.A.C. 11:22-1.1,

__ N.J. Super. __, __ (App. Div. 2019). There, we concluded that the paying entities were authorized by HCAPPA to recover overpayments of benefits paid under "stand-alone" or "dental-only" plans. Id. at __ (slip op. at 11).

Plaintiffs further argue that HCAPPA does not permit Aetna to recover payments made to providers on claims of persons who were not covered on the dates of service. As we have explained, plaintiffs submitted certain claims to Aetna for payment, and Aetna initially paid the claims, based on the understanding that the patients were covered on the dates of services. Later, Aetna learned that the patients did not have coverage.

Plaintiffs note that HCAPPA requires health insurers to pay certain submitted claims promptly. Indeed, N.J.S.A. 17B:28-44.2(d)(1) states that a health insurer must remit payment no later than thirty calendar days after receipt of the claim or the time established by 42 U.S.C. § 1395(u)(c)(2)(B) for payment of Medicare claims, whichever is earlier, and no later than forty days after receipt if the claim is submitted by other than electronic means. In addition, a health insurer is required to pay the claim if:

> (a) the health care provider is eligible at the date of service;
>
> (b) the person who received the health care service was covered on the date of service;

(c) the claim is for a service or supply covered under the health benefits plan;

(d) the claim is submitted with all the information requested by the payer on the claim form . . . ; and

(e) the payer has no reason to believe that the claim has been submitted fraudulently.

[N.J.S.A. 17B:27-44.2(d)(1).]

Plaintiffs contend that because N.J.S.A. 17B:27-44.2(d)(10) states that the health insurers may seek reimbursement for claims "previously paid pursuant to" this section, the insurer may only seek reimbursement for the payment of claims that met the eligibility standards specified in subsection (1). We cannot agree.

Where, as occurred here, the insurer pays a claim based on the assumption that the person is covered under a benefits plan, but later learns that the person did not have coverage on the date of service, the insurer has made an "overpayment" for purposes of HCAPPA and it is entitled to recover the amount mistakenly paid. As the trial court aptly observed, this is precisely the situation the Legislature sought to address in HCAPPA's reimbursement provisions, particularly since the insurers are required to make eligibility determinations and pay claims promptly and in doing so, may make mistakes as to coverage.

8

Plaintiffs also argued that HCAPPA does not authorize a payer to effect a reimbursement of an overpayment by withholding a payment due to a provider for a claim submitted on behalf of a different patient.  In support of this argument, plaintiffs rely upon N.J.S.A. 17B:27-44.2(d)(11)(a)(iii), which states in part that

> [t]he payer may collect the funds for the reimbursement request by assessing them against payment of any future claims submitted by the health care provider after the [forty-fifth] calendar day following the submission of the reimbursement request to the health care provider or after the health care provider's rights to appeal set forth under [N.J.S.A. 17B:27-44.2(e)(1) and (2)] have been exhausted if the payer submits an explanation in writing to the provider in sufficient detail so that the provider can reconcile each covered person's bill.

Although HCAPPA requires the payer to submit a written explanation to the provider to allow the provider to "reconcile each covered person's bill," this does not limit the payer's ability to collect the funds for the reimbursement by assessing that amount "against payment of any future claims submitted by the health care provider."  As we conclude in In re Amendments to N.J.A.C. 11:22-1.1, the term "any future claims" includes future claims related to patients other than the patient for whom the overpayment was made.  __ N.J. Super. at __ (slip op. at 15).

A-5000-17T2

Plaintiffs further argue that the payments that Aetna made to them are not recoverable under the law of restitution or by self-help recoupment. In this case, however, Aetna did not assert claims against plaintiffs for restitution. Aetna exercised its right under N.J.S.A. 17B:27-44.2(d)(11) for reimbursement of the overpayments it made to plaintiffs on claims submitted in respect of persons who were not entitled to coverage.

Furthermore, even if the common law were interpreted and applied as plaintiffs claim, the reimbursement provisions of HCAPPA abrogate the common law and provide the payer entities, like Aetna, the right to recoup overpayments from future claims submitted by the provider, including any claims for services provided to other patients. See In re Amendments to N.J.A.C. 11:22-1.1, __ N.J. Super. at __ (slip op. at 14-15).

In view of our decision, we need not consider plaintiffs' argument that the trial court erred by denying their motion to amend the complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5000-17T2