**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0375-20

NOAH MURNANE (a minor),
and MELISSA MURNANE
and BRIAN MURNANE,
guardians ad litem
for NOAH MURNANE,

      Plaintiffs-Appellants,

v.

GREGORY MORTIMER,
SAMANTHA WEIRBACK,
and AMERICAN MODERN
HOME INSURANCE
COMPANY,

      Defendants,

and

GREGORY MORTIMER,
and SAMANTHA WEIRBACK,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

AMERICAN MODERN

HOME INSURANCE
COMPANY,

 Third-Party Defendant-
 Respondent.

_____

   Submitted October 20, 2021 – Decided February 23, 2022

   Before Judges Fuentes, Gooden Brown, and Gummer.

   On appeal from the Superior Court of New Jersey, Law
   Division, Gloucester County, Docket No. L-1434-18.

   Hoffman DiMuzio, attorneys for appellants (Michael C.
   Donio, on the briefs).

   Lindabury, McCormick, Estabrook & Cooper, PC,
   attorneys for respondent American Modern Home
   Insurance Company (Jay Lavroff and Steven Backfisch,
   on the brief).

PER CURIAM

In this dog-bite case, plaintiff, as assignee of defendants'/third-party plaintiff's insurance-coverage claim, appeals an order granting the insurer's summary-judgment motion, denying defendants'/third-party plaintiffs' cross-motion for summary judgment, and dismissing with prejudice the third-party complaint. We agree with Judge Timothy W. Chell's holding that defendants were not entitled to coverage because of the policy's business-pursuit exclusion, and, accordingly, we affirm.

I.

We glean these facts from the summary-judgment record, viewing them in the light most favorable to the party opposing summary judgment. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Melissa Murnane and Brian Murnane hired defendant/third-party plaintiff Samantha Weirback to provide after-school childcare for their son Noah,[1] who was then four-years old and in preschool, and their daughter Isabel, who was eight- or nine-years old, until the end of the school year. They paid her $400 every two weeks. Weirback generally would pick Noah up from preschool and bring him home to his mother's house, where she watched over him. Later in the day, she would pick Isabel up from school.

Weirback lived in an apartment with defendant/third-party plaintiff Gregory Mortimer and their dog. About six weeks after her employment began, defendant picked Noah up from school, but instead of taking him home to his mother's house, she took Noah to her apartment because she wanted to change her clothes. She removed her mail from her mailbox and brought Noah upstairs

---

[1] Because of their common last name, we use first names when referencing members of the Murnane family for ease of reading.

A-0375-20

to her apartment. While she was looking through her mail, she heard a noise, turned around, and saw the dog lunging at Noah. Noah sustained serious injuries as a result of being bitten by the dog.

At the time of the dog bite, Mortimer and Weirback were insured under a renter's insurance policy issued by third-party defendant American Modern Home Insurance Company (American Modern). The policy provided liability and property coverage. The liability section of the policy stated: "We will pay all sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this policy applies." The liability section contained an exclusion for "bodily injury . . . arising out of business pursuits of any insured except . . . activities which are ordinarily incidental to non-business pursuits . . . ." The policy defines "[b]usiness" as including: "trade, a profession or occupation engaged in for compensation, and the rental or holding for rental of any part of any premises by an insured. Part time, self-employed activities by any insured under the age of 18, such as newspaper delivery, baby sitting or lawn care, are not business[es]."

As Noah's guardians ad litem, Melissa and Bryan filed on Noah's behalf a complaint, alleging Mortimer and Weirback were strictly liable under N.J.S.A. 4:19-16 for the damages Noah suffered as a result of the dog bite. They also

A-0375-20

included a direct claim against American Modern, alleging it had wrongfully denied coverage. The trial court subsequently granted American Modern's motion to dismiss that claim and Weirback's and Mortimer's motion for leave to file a third-party complaint against American Modern. In the third-party complaint, Weirback and Mortimer asserted they were entitled to coverage under the policy.

American Modern moved for summary judgment, arguing defendants/third-party plaintiffs were not entitled to coverage because at the time of the dog bite, Weirback "was engaged in her regular, continuous, and ongoing business of babysitting for Noah, for which she was being paid . . ." and, thus, fell under the business-pursuit exclusion. Weirback and Mortimer cross moved for summary judgment, conceding the policy's business-pursuit exclusion applied but contending Weirback "was not engaged in her activity as a babysitter, but was instead at her house only to change clothing" and, thus, the incidental-activities exception to the policy's business-pursuit exclusion applied.

After hearing oral argument, Judge Chell issued a written decision and order granting American Modern's motion, denying the cross-motion, and dismissing the third-party complaint with prejudice. Finding the facts of this case were similar to those in <u>Carroll v. Boyce</u>, 272 N.J. Super. 384 (App. Div.

1994), and rejecting Weirback's and Mortimer's argument that the incidental-activity exception applied, the judge held although Weirback

> did not usually watch over the minor [p]laintiff at her residence, her supervision of the child, which is what she was being paid for, began as soon as she picked him up from school. The [c]ourt finds that the business of a babysitter is to care for the child. The [c]ourt finds that from the moment she picked up the minor [p]laintiff from school, she was in charge of caring for the child and protecting him from harm. As such, the [c]ourt finds that neither the location nor the type of injury is sufficient in this case to remove it from falling under the business pursuit [exclusion] in the insurance contract.

After obtaining an assignment of the coverage claim against American Modern and filing an amended complaint naming plaintiff as Mortimer's and Weirback's assignee in their third-party action against American Modern, plaintiff appealed, arguing the motion judge had erred in failing to apply the incidental-activity exception to the policy's business-pursuit exclusion and in relying on Carroll, 272 N.J. Super. 384.

## II.

We review a grant of summary judgment de novo, using "the same standard that governs the motion judge's" decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to

A-0375-20

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). In our review, we owe "no special deference" to the trial court's legal analysis. RSI Bank, 234 N.J. at 472.

An interpretation of an insurance policy "turns on a purely legal question" and is subject to de novo review. Pickett ex rel. Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 554-55 (App. Div. 2020). "If the plain language of the policy is unambiguous, we will not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." Id. at 555 (quoting Templo, 224 N.J. at 200); see also Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry"). "[O]ur courts will enforce

exclusionary clauses if specific, plain, clear, prominent, and not contrary to public policy, notwithstanding that exclusions generally must be narrowly construed, and the insurer bears the burden to demonstrate they apply." Pickett, 464 N.J. Super. at 555 (quoting Abboud v. Nat'l Union Fire Ins. Co., 450 N.J. Super. 400, 407 (App. Div. 2017)).

Judge Chell's factual findings – Weirback's "supervision of the child," the job for which she was being paid, "began as soon as she picked him up from school" and "she was in charge of caring for the child and protecting him from harm" – were not genuinely disputed and were fully supported by credible evidence in the record. We agree with Judge Chell's interpretation of the plain language of the policy and the application of the facts of this case to that language. He correctly rejected the argument that under the facts of this case the incidental-activity exception applied to the business-pursuit exception.

Noah was not at Weirback's apartment for a social visit nor was he there because he was her friend. Cf. N.J. Prop. Liab. Guar. Ass'n v. Brown, 174 N.J. Super. 629, 631 (App. Div. 1980) (finding incidental-activity exception applied to business-pursuit exclusion when plaintiff, who was a friend of the insured, was visiting the insured for social purposes unrelated to the insured's business). He was with Weirback because, as part of her paid job, she was supposed to be

A-0375-20

supervising and taking care of him. On the day of the dog bite, instead of taking him home, she took him to her apartment where she had a dog, and instead of supervising him and protecting him from harm, she looked away from him to go through her mail, leaving him unsupervised in the presence of a dog. Those omissions, which gave rise to Noah's injuries, were directly related to her job. See Stanley v. Am. Fire & Cas. Co., 361 So.2d 1030, 1033 (Ala. 1978) (in case in which child was injured while babysitter was cooking lunch, court held, "[t]he activity referred to is not preparing lunch, which would ordinarily be incident to a non-business pursuit, but rather to the failure to properly supervise a young child. Supervising children on a regular basis for compensation is ordinarily a business pursuit"). Accordingly, Judge Chell correctly declined to apply the incidental-activity exception to the policy's business-pursuit exclusion under the facts of this case.

Judge Chell properly relied on Carroll, 272 N.J. Super. 384, which involved the same policy language, an insured who was being paid to babysit for a child, and a minor plaintiff who sustained injuries while under his babysitter's care. Id. at 385-86. Like the insured in Carroll, Weirback

> was engaged in a permanent babysitting arrangement for an agreed upon compensation[; thus] she was clearly involved in a "business pursuit." The very purpose of her business was to care for the infant and

to protect him from the dangers of injury. As such, we cannot conclude that a babysitter's conduct in failing to do so can be considered incident to her non-business pursuits, irrespective of what [the babysitter] was doing at the time and how the injuries occurred. See, e.g., McCloskey v. Republic Ins. Co., . . . 559 A.2d [385,] 390 [Md. Ct. Spec. App. (1989)]. The injuries resulted from [the babysitter's] failure to adequately discharge her business pursuit. Therefore, the policy exclusion applies and the exception to the exclusion must be deemed inapplicable.

[Carroll, 272 N.J. Super. at 390-91.]

We are not persuaded by plaintiff's attempt to distinguish Carroll based on his assumption Carroll involved a negligent-supervision claim rather than the strict-liability claim under the dog-bite statute, N.J.S.A. 4:19-16, at issue in this case. Even if that assumption were correct, it is a distinction without a difference when the policy does not require a finding of negligence and when Weirback concedes that while Noah was in her care, she brought him to a place with a dog, she looked through her mail instead of supervising him in the presence of the dog, and he sustained serious injuries as a result of being bitten by the dog. We also discern no merit in plaintiff's legal interpretation of Carroll and reject his contention that Carroll renders meaningless the incidental-activity exception.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION