817 A.2d 436 (2003)
358 N.J. Super. 271
Michael T. HOPKINS, Executor of the Estate of Joseph J. Hopkins, Sr., Deceased, Plaintiff-Appellant,
v.
CITY OF GLOUCESTER and William C. Johnson, jointly, severally and in the alternative, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 2003.
Decided March 12, 2003.
*438 John C. Connell argued the cause for appellant (Archer & Greiner, attorneys; Mr. Connell and William L. Ryan, Haddonfield, on the brief).
Michael O. Kassak and M. James Maley, Jr. argued the cause for respondents (White & Williams, Parker, McCay & Criscuolo, attorneys; Mr. Maley, Steven B. Roosa and David E. Dopf, Westmont, on the brief).
Before Judges KING, WECKER and LISA.
*437 The opinion of the court was delivered by LISA, J.A.D.
Plaintiff, Joseph J. Hopkins, Sr.,[1] appeals from an order granting summary judgment in favor of defendants, dismissing his complaint for defamation, and denying plaintiff's motion for partial summary judgment to determine statements by defendants constitute slander per se. On appeal, plaintiff contends the trial judge erred by granting summary judgment in favor of defendants because the record contains sufficient evidence to withstand summary judgment that defendant, William C. Johnson, made slanderous statements about plaintiff with actual malice. Plaintiff further contends the uncontroverted facts in the record establish slander per se, and therefore the trial judge erred in denying his cross-motion for partial summary judgment. We agree with plaintiff's first contention and reverse the portion of the order granting summary judgment dismissing plaintiff's complaint. We reject plaintiff's second contention and affirm the portion of the order denying plaintiff's cross-motion for partial summary judgment.
Viewing the evidential materials most favorably to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), these are the facts. Plaintiff was a public accountant and real estate investor in the City of Gloucester. In August 1998, Helen Danella contacted plaintiff, upon a referral from a friend of hers, for assistance. Danella was delinquent in the real estate taxes on her home, which was in danger of being put up by the City for tax sale. Plaintiff and Danella say they entered into a verbal agreement, providing that plaintiff would pay her back taxes in exchange for which Danella would later negotiate a favorable sale price of the house to him.
On August 21, 1998, plaintiff went to the City tax collector's office. He presented two checks to pay Danella's taxes current. The City would not accept a personal check for the amount due on the tax title lien. Thus, plaintiff presented a certified check[2] issued by Equity National Bank in the amount of $3,162.12 payable to "Gloucester City" to satisfy the tax title lien. To pay the current taxes due, plaintiff presented his business check, which was acceptable for this purpose, in the amount of $1,830.97. The tax collector's office issued receipts for the payments and *439 deposited the checks in an account at PNC Bank.
On August 27, 1998, Johnson received a notice from PNC stating the $3,162.12 check was being returned unpaid. The reason for the return was "ENDORSEMENT IRREGULAR." The notice clearly designated the payee as "GLOUCESTER CITY." Johnson acknowledged that he knew from the time he received the notice"from day one"the certified check "can't bounce. I mean, it can't be returned for non-sufficient funds. So [I] ruled that out." He elaborated "in all the bounced check things, it will say in the return thing NSF."
Johnson called PNC Bank to inquire about the check. When he told the PNC representative the notice identified the problem as irregular endorsement, the representative replied "that's probably what it was, the name on the ba[c]k may not match the name that was on the front." Johnson testified his office sometimes gets checks payable to Gloucester Township or Gloucester County and sometimes there is a mixup. Johnson made no further inquiries of PNC.
Yet, on September 8, 1998, Johnson and an employee in his office, Lisa, informed Danella that plaintiff's check bounced. According to Danella, Johnson "said that he's going to send the cops around for Mr. Hopkins because he's passing bad checks." Distressed with this information, Danella called plaintiff and spoke to him and his son Michael T. Hopkins on a speaker phone. Michael relates that Danella said Johnson "was going to send the police to have [plaintiff] arrested, his checks bounced, that he was taking advantage of the elderly and that she should have no dealings with him."
On the same date, plaintiff called Johnson, who informed plaintiff that "both his checks bounced; that he was going to have the cops come and arrest him." When plaintiff asked how a certified check could bounce, Johnson responded for a number of reasons, including insufficient funds. It is undisputed that the business check for $1,830.97 was paid without incident.
Plaintiff immediately called Equity National Bank, which issued the certified check. He spoke to Gerald McKee, a vice president, who stated it was impossible for a certified check to bounce, and it is possible that the check did not clear the Federal Reserve Bank because the endorsement was too light or did not match the named payee. The return notice identified an irregular endorsement as the problem. Of course, that problem is attributable to some action or inaction by the payee, the City of Gloucester. Plaintiff asked McKee to call Johnson, which he did. Johnson believed he called McKee, although he is not sure who initiated the call. In any event, McKee assured Johnson the check was good. Plaintiff then called Johnson and asked for an apology, to which Johnson replied "you'll get no apology from this office ... you'll get your apology in jail."
The check was eventually paid and Johnson informed Danella by letter on September 11, 1998 that the two checks from plaintiff cleared, her property was removed from the tax sale and her account was current. Several local residents gave testimony confirming statements made to them by Danella about the derogatory statements made by Johnson about plaintiff.
In a September 9, 1998 internal memorandum to the City Administrator, Johnson explained the course of events surrounding the checks for Danella's property. In describing what happened on September 8, 1998, he stated Lisa had been on the phone with Mrs. Danella after which he "then informed Lisa of *440 the bounced check and told her to call Mrs. Danella back in reference to the check. I stated that we had received a notice of the bounced check, ...." (emphasis added). This, of course, contradicts Johnson's deposition testimony that he knew on August 27, 1998 the certified check could not and did not bounce. It appears from Johnson's deposition testimony that he equates the expression "bounced" with returned for non-sufficient funds, not merely returned for any reason. A jury could certainly so find.
To be sure, defendants give a different version of the events. Johnson could not recall whether he ever told anyone plaintiff's checks bounced. He denied telling anyone that plaintiff was passing bad checks, that he was dishonest, that he was taking advantage of the elderly, or that he was going to have him arrested. Defendants characterize the events as a temporary mix-up between the banks which was satisfactorily resolved. Johnson had a responsibility to inform the affected taxpayer, Danella, of the returned check. It is customary practice that if a check is returned they notify the police, and he was making an effort to avoid that, which he did. But he never accused plaintiff of unlawful, dishonest or other wrongful conduct.
Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A fact issue is genuine only if, considering the burden of persuasion at trial, the motion evidence, together with all legitimate inferences favoring the non-moving party, would require submission of the issue to the trier of fact. Ibid.
In deciding whether to grant summary judgment, the motion judge considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., supra, 142 N.J. at 540, 666 A.2d 146. On appeal, we apply the same standard as the trial court. Prudential Property Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div.1998).
To prove defamation, a plaintiff must establish that the defendant made a defamatory statement concerning the plaintiff, which was false, and communicated that statement to a person other than the plaintiff. Gray v. Press Communications, LLC, 342 N.J.Super. 1, 10, 775 A.2d 678 (App.Div.2001). Public officers are cloaked with general discretionary immunity in the performance of their duties. Burke v. Deiner, 97 N.J. 465, 470, 479 A.2d 393 (1984). "[I]n defamation actions against non-constitutional public officers arising from the exercise of administrative discretion, immunity will not be lost unless the defamation is made with actual malice in the New York Times v. Sullivan sense: `with knowledge that it was false or with reckless disregard of whether it was false or not.'" Id. at 475, 479 A.2d 393 (quoting New York Times v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26, 11 L.Ed.2d 686, 706 (1964)). The parties agree that as Tax Collector, the actual-malice standard applies to Johnson.
In order to satisfy the actual-malice standard, "a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Lynch v. New Jersey Educ. Ass'n., 161 N.J. 152, 165, 735 A.2d *441 1129 (1999). "While initially the question of malice must be determined by the court as [a] question of law, summary judgment may only be granted if a reasonable factfinder could not find that plaintiff had established malice by clear and convincing evidence." Gray, supra, 342 N.J.Super. at 11, 775 A.2d 678.
In order to survive a summary judgment motion, a plaintiff must produce substantial evidence of actual malice. Id. at 12, 775 A.2d 678. Although the evidence is construed in the light most favorable to the plaintiff, the clear and convincing standard in a defamation case adds an additional weight to the plaintiff's burden. Ibid. "On the other hand, ordinarily, where a party's state of mind is critical, and there is a genuine critical issue of material fact as to the state of mind, summary judgment should be denied since the issue of state of mind does not readily lend itself to summary disposition." Ibid. (citing Costello v. Ocean County Observer, 136 N.J. 594, 615, 643 A.2d 1012 (1994)). Because direct evidence is rarely available to prove state of mind, summary judgment should be denied "if the issue of malice is present, provided that if when considered in the light most favorable to plaintiff, the reasonable inferences to be drawn from the evidence could lead a factfinder to conclude that defendant acted with malice, or, in reckless disregard of the truth." Ibid.
The trial judge issued a written opinion granting defendants' motion for summary judgment and denying plaintiff's motion for partial summary judgment. The judge stated:
In this case, confusion about the check originated with and confusion reigned among the banks involved. For example, it was suggested by PNC Bank to Tax Collector Johnson, when he called to find out what was going on, that the notation "Endorsement Irregular" might mean that the Tax Collector's office didn't endorse the check or that the endorsement was too light. But that turned out not to be true. Equity National Bank couldn't understand what was going on either, and suggested that PNC should have but failed to put its stamp on the check. But that scenario didn't turn out to be a factor either, since the Federal Reserve Bank finally paid PNC Bank, and PNC Bank finally credited the Tax Collector's account. It is also uncontroverted that the statement or characterization by Mr. Johnson about the $3,136.12 check originated from the "PNC BANK RETURN ITEMS" notice to him that the check "is being returned unpaid." That notice from PNC Bank could provide a basis to characterize the check as having been "bounced" by the bank, since, according to PNC Bank/"PNC Bank Return Items", the check was being returned unpaid. Given the confusion that originated with, and was generated by the various banks, and perhaps a lack of astuteness or confusion on Mr. Johnson's part about banking terminology, banking niceties or banking machinations, the defamation claim cannot withstand summary judgement. Even if he should have known the statement was false or should have doubted its accuracy, and even if he should have made a fuller investigation or further inquiry about the status of the check, that evidence would only establish possible negligenceit would not establish a showing by plaintiff of knowledge by Mr. Johnson of the falsity of the statement, or serious doubt about its truth.
The judge concluded that "[a]bsent a sufficient showing by plaintiff of actual malice on the part of Mr. Johnson, he and his employer are immune from suit."
*442 We do not agree. In our view, there is sufficient competent evidence in the record to enable a factfinder to conclude, by clear and convincing evidence, that Johnson made false statements about plaintiff with actual malice. The jury could reasonably find that Johnson was fully aware that the certified check was good and that any problem with its payment through the banking system was not the fault of plaintiff but of his office. This is because the PNC notice clearly stated the payee on the check was correctly designated as Gloucester City and the reason for non-payment was an irregular endorsement. This status was confirmed to Johnson by a PNC representative. Indeed, Johnson testified he knew "from day one" the check was not returned for insufficient fundsi.e., it had not bounced. He knew a certified check could not bounce. The jury could likewise find that in this context, the term "bounce" is commonly understood to mean, and was intended by Johnson to mean, a check returned for insufficient funds due to the maker's dereliction. Under this scenario, the jury could find Johnson made the statements with knowledge of their falsity.
Even without a finding of knowledge of falsity, the jury could find a reckless disregard on Johnson's part for the truth or falsity of his statements. Johnson holds the office of Tax Collector. Receiving and depositing checks for payment of taxes is a regular and substantial part of his duties. It is reasonable to infer that he is knowledgeable about relatively simple banking practices and terminology, at least to the extent of knowing the difference between a check returned for insufficient funds and one returned for an irregular endorsement. The former is caused by the maker's dereliction; the latter results from some irregularity by the payee.
The actual-malice standard is subjective. Costello v. Ocean County Observer, supra, 136 N.J. at 615, 643 A.2d 1012. It must be established that Johnson "in fact entertained serious doubts about the truth of the statement[s] or that defendant had a subjective awareness of the [statements'] probable falsity." Ibid.
Rarely will direct evidence exist to meet that burden. Instead, a plaintiff might show actual malice by demonstrating that the defendant had "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." St. Amant, supra, 390 U.S. at 732, 88 S.Ct. at 1326, 20 L.Ed.2d at 268. Or the plaintiff might show that the defendant had found internal inconsistencies or apparently reliable information that contradicted the story's libelous assertions but nevertheless had published the article. Curtis Publishing Co. v. Butts, 388 U.S. 130, 161 n. 23, 87 S.Ct. 1975, 1995 n. 23, 18 L.Ed.2d 1094, 1115 n. 23 (1967) (plurality opinion). Although failure to investigate fully will not by itself be sufficient to prove actual malice, a failure to pursue the most obvious available sources for corroboration may be clear and convincing evidence of actual malice. Rodney A. Smolla, Law of Defamation § 3.18[1], at 3-42 (1986).
Because the issue of a defendant's state of mind "does not readily lend itself to summary disposition," courts are wary of disposing of cases involving actual malice through summary judgment. Maressa v. New Jersey Monthly, 89 N.J. 176, 197 n. 10, 445 A.2d 376, cert. denied, 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982).

[Ibid.]
As of September 8, 1998, Johnson possessed no information that the check had bounced or that plaintiff had been passing *443 bad checks, preying on the elderly, was dishonest or untrustworthy, or had engaged in illegal conduct that would subject him to being arrested. The information Johnson had was the PNC notice, which placed the responsibility for the returned check on the endorseri.e. Johnson's office, and confirmation from a PNC representative that the problem was probably that the name on the endorsement did not match the named payee. Yet the notice designated "Gloucester City" (not, e.g., "Gloucester Township" or "Gloucester County") as the payee. Therefore, a mismatched name would not be the mistake of the maker, but of the endorser.
The PNC notice constituted "apparently reliable information that contradicted" his statements about plaintiff. We note that, viewing the motion record most favorably to plaintiff, Johnson made multiple derogatory statements about plaintiff, beyond his statement that the check bounced. In this regard, we note that the additional statements, if believed, confirm that Johnson understood and intended the term "bounced check" to mean a check returned because of insufficient funds, and not a generic term referring to a check returned for any reason. Why else would he say he was going to have plaintiff arrested? Johnson's failure to seek further information, either from PNC or Equity National Bank, "obvious available sources," before September 8, 1998 is further evidence of his reckless disregard for the truth or falsity of his statements.
The portion of the order granting defendants' summary judgment motion dismissing plaintiff's compliant is reversed. We affirm the portion of the order denying plaintiff's motion for partial summary judgment seeking a determination that Johnson's statements constitute slander per se. Johnson, in his deposition testimony, denies making some of the statements and does not recall others. The record contains disputed versions of what statements were made. Whether any such statements qualify as slander per se is better resolved at the time of trial when the record is fully developed. This issue is not ripe for summary judgment disposition.
We affirm in part, reverse in part, and remand for further proceedings. We do not retain jurisdiction.
NOTES
[1] The original plaintiff, Joseph J. Hopkins, Sr., died during the pendency of this appeal. Our references throughout this opinion to plaintiff are to Joseph J. Hopkins, Sr.
[2] This check is sometimes referred to in the record as a teller's check or a cashier's check. For consistency, we use the term certified check throughout this opinion.