**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0321-20

RALPH DYKE,

     Plaintiff-Appellant,

v.

JOHN J. PISANO, and
STEVEN H. ISAACSON,

     Defendants-Respondents.

_____

Argued October 28, 2021 – Decided January 13, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3317-19.

Barbara J. Boyd argued the cause for appellant (Maselli Warren, PC, attorneys; Paul J. Maselli of counsel and on the briefs; Shawn D. Edwards and Deanne J. Lowden, on the briefs.)

Vincent Richard Glorisi argued the cause for respondents.

PER CURIAM

In this legal malpractice case, plaintiff Ralph Dyke appeals from a September 25, 2020 order granting summary judgment to defendants, his former attorneys, John J. Pisano and Steven H. Isaacson. The judge concluded that plaintiff's voluntary settlement of his personal injury lawsuit estopped his later claim that the attorneys' negligence compelled him to settle for less than the full value of his case. We affirm.

We discern the following facts from the record. Defendant Pisano represented plaintiff for injuries sustained in a November 13, 2015 hit-and-run accident. In the underlying case, plaintiff alleged that he was struck by a motor vehicle as he was walking in the parking lot of an A&P supermarket in Kenilworth, New Jersey. After being struck by the car, plaintiff did not report the incident to anyone at the supermarket, nor did he call the police or file a report with the Kenilworth Police Department.

Two days later, on November 15, 2015, plaintiff presented at the emergency department of Overlook Medical Center complaining of back and chest pain. The history recorded in the ER records indicate the mechanism of the injury was a "mechanical fall." Plaintiff was treated and discharged from the emergency department with a diagnosis of a rib fracture. The discharge

2

instructions advised plaintiff to follow up with Dr. Daniel Preston, his primary care physician.

In accordance with the discharge instructions, on November 17, 2015, plaintiff saw Dr. Preston. Dr. Preston's progress note indicates that plaintiff was seen in a follow-up from the visit to Overlook Medical Center for "injuries consequent to a fall."

Several weeks after the accident, plaintiff encountered defendant Pisano on the street. Defendant had previously represented plaintiff in other personal injury matters.[1] During this happenstance encounter, plaintiff advised defendant that he had been hit by a car and inquired if he was entitled to some type of disability benefits as a result of the accident because he could no longer work in his drywall business due to his injuries. Based on defendant's account of being struck by a hit-and-run vehicle, Pisano assessed that plaintiff may have a claim for uninsured motorists (UM) benefits under his automobile policy with New

---

[1] These other matters include: a rear end motor vehicle accident in the 1990's that ultimately settled; a suit against a Home Depot located on Route 22 in Union, NJ for which he received a settlement; and a worker's compensation case in which plaintiff fell down some stairs while working in Cranford.

Jersey Manufacturer's (NJM). Defendant agreed to represent plaintiff on a contingency basis.[2]

After defendant received and reviewed plaintiff's ER records, he voiced his concern to plaintiff that the records attributed his injuries to a fall and did not record a history of being hit by a car. Defendant advised plaintiff that the medical records would undermine his credibility and make this a more difficult case to prove on the issue of liability.

The matter was scheduled for mandatory arbitration on September 14, 2017. See R. 4:21A-1(a)(2). Codefendant Steven Isaacson was the court-appointed arbitrator. Isaacson, crediting plaintiff's account that he was struck by a car, found the hit-and-run driver 100% liable for the accident. Based on the medical and other proof of damages, Isaacson awarded $95,000 in damages.[3] NJM rejected the award and requested a trial de novo.

The case was scheduled for trial on April 23, 2018. Defendant Pisano, apparently unaware of Isaacson's role as the court-appointed arbitrator, engaged

---

[2] It is disputed whether defendant required plaintiff to sign a written retainer agreement. Defendant does not allege, however, that the fee charged exceeded the amount permitted by RPC 1.5.

[3] Had the arbitrator disbelieved plaintiff's account, the liability against the alleged hit-and-run driver would have been zero percent and the case would have been dismissed at arbitration.

A-0321-20

Isaacson on a per diem basis to meet plaintiff at the courthouse and conference the case. If Isaacson could not settle the case, he would advise Pisano, and either Pisano or another attorney would come to the courthouse to try the case.

Although there are many disputes about what occurred on the day of trial, it is undisputed that the trial judge conducted a settlement conference during which the insurance company made a final settlement offer of $45,000. Plaintiff admitted at his deposition that defendant Pisano advised him early in the representation, and thereafter including on the day of trial, that the case presented a significant causation issue. Plaintiff has since admitted in response to Notice to Admit number seven that he authorized the defendants to accept the $45,000 settlement. The terms of the settlement were not placed on the record, but they are reflected in the judge's order of dismissal.

It is also undisputed that on June 11, 2018, approximately seven weeks after the settlement, plaintiff appeared at Pisano's office and executed the release. Plaintiff admitted that when he signed the release, he was not under any duress or coerced in any way. He was aware that by signing the release he was resolving the claim for the agreed-upon amount. Plaintiff also signed a settlement statement reflecting that after costs, fees, and medical liens his net

A-0321-20

recovery was $28,784,70. Thereafter, Pisano provided plaintiff with the settlement check and plaintiff deposited the money in his bank account.

On September 23, 2019, approximately one year and three months after signing the release, plaintiff filed a complaint against defendants for legal malpractice and breach of contract based on their "settling for far less th[a]n the fair value of the claims." In that regard, plaintiff's expert opined that the true value of the case was $95,000, the amount of the arbitration award. Plaintiff alleged that he felt pressured to settle because defendant would have required him to pay the expert witness's fee. He alleged that defendant's failure to have an expert in court on the trial date indicated defendant was not ready to try the case. Plaintiff also claimed that defendant Pisano did not adequately prepare him for depositions or trial. He alleged similar complaints against defendant Isaacson and claimed Isaacson's conferencing the case without advising him of his role as the arbitrator violated RPC 1.12.

After discovery, defendants moved for summary judgment. On September 25, 2020, the motion judge entered an order granting summary judgment to defendants. The judge acknowledged the existence of disputed facts that would defeat summary judgment, absent the circumstances surrounding the settlement on the trial date and thereafter. The judge therefore declined to resolve whether

defendants were negligent, stating that he was "satisfied based on [plaintiff's] allegations that the issue of malpractice is one that should go to a jury . . . ." Notwithstanding, the judge found plaintiff's voluntary execution of the release barred his legal malpractice claim.

> But I think what all of these cases talk to is the facts of the matter. And if it were just the facts, as I said, if it were just the facts of the matter of the settlement that took place on the trial date I wouldn't hesitate in denying summary judgment in this matter. But what do we know about [plaintiff]? Well [plaintiff] is an experienced litigant. This wasn't his first rodeo so to speak. He had been represented by Mr. Pisano a number of times. In fact, when you read the papers he had gotten hurt and was treating – I can't believe anyone would find Dr. He without being represented but that's a story for another day. But he was treating and he ran into him in traffic in Cranford one day, which is maybe how Mr. Pisano gets a lot of his clients, I don't know. And he says, hey I got hurt again.
>
> And so here's a guy who knew his way around the system. He had a number of cases. He had been represented by Pisano in a number of cases. Then the settlement takes place on the trial day, and as Mr. Pisano apparently prepares the settlement papers the next day, but then [plaintiff] doesn't show up until six weeks later, I think they said June eleventh. And he testifies at his deposition, were you under any duress when you signed those papers? No, I wasn't under any duress. So the combination of his experience with litigation, his experience with Mr. Pisano, the fact that he waited seven weeks and then went in and signed the settlement papers, didn't feel under any duress whatsoever I think undermines his claim that the

7

settlement was against his will. And based on the circumstance that took place on the day that took trial.

And I don't think there's any material fact in dispute as to that. And so for those reasons I do find that despite a lot of questionable conduct on behalf of Mr. Pisano, or alleged questionable conduct, that based on the way the settlement was finalized by this litigant and his experience with the system that he should be precluded from proceeding on the legal malpractice case.

On appeal, plaintiff raises the following arguments for our consideration:

POINT I

THE TRIAL COURT MISREPRESENTED THE HOLDINGS IN [THE] PUDER AND ZIEGELHEIM CASES IN FINDING THAT [PLAINTIFF] WAS PRECLUDED FROM PURSUING LEGAL MALPRACTICE CLAIMS AGAINST THE DEFENDANTS.

    A. The Puder Exception to Ziegelheim Only Applies under Narrow Circumstances.

    B. The Trial Court Failed to Analyze the Settlement of the Underlying Lawsuit in Accordance with Ziegelheim and Puder.

POINT II

EVEN IF THE PUDER EXCEPTION APPLIED, THE TRIAL COURT FAILED TO VIEW THE EVIDENCE IN A LIGHT MOST FAVORABLE TO DYKE AND GRANT HIM ALL REASONABLE INFERENCES IN GRANTING SUMMARY JUDGMENT.

A. The Evidence of Record When Viewed in a Light Most Favorable to Dyke Supports His Malpractice Claims Against the Respondents.

B. The Trial Court Erred in Marking a Factual Finding that the Settlement was Entered into Voluntarily.

C. The Trial Court Judge Erred in Making a Factual Finding that Dyke was an Experienced Litigant.

We agree with plaintiff that the motion judge improperly considered his prior experience as a litigant represented by defendant Pisano as a factor bearing on the voluntariness of the settlement. The motion judge correctly found, however, that plaintiff's words and conduct conclusively establish the settlement was both knowing and voluntary, and plaintiff is therefore barred from pursuing additional compensation from defendants.

We review a trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or

order as a matter of law." R. 4:46-2(c). "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529-30 (1995)). This court's review is "based on [its] consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523.

Malpractice claims are permitted when plaintiffs allege "particular facts in support of their claims of attorney incompetence . . . ." Ziegelheim v. Apollo, 128 N.J. 250, 267 (1992). The existence of a settlement agreement does not automatically bar a subsequent malpractice suit against an attorney. Id., at 265. Such claims may be precluded, however, when a client decides to "settle a case for less than it is worth . . . and then seek[s] to recoup the difference in a malpractice action against [the] attorney." Puder v. Buechel, 183 N.J. 428, 443 (2005); see also Guido v. Duane Morris LLP, 202 N.J. 79, 90 (2010). In those circumstances, a party may be equitably estopped from bringing his or her claim. See Puder, 183 N.J. at 437; see also Guido, 202 N.J. at 94 ("Puder represents not a new rule, but an equity-based exception to Ziegelheim's general rule . . . .").

A-0321-20

"A settlement is essentially a contract which is to be enforced, as written, absent a demonstration of fraud or other compelling circumstances." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 451 (App. Div. 2011); see also Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474-75 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo). "An offeree may manifest assent to the terms of an offer through words . . . or by conduct[.]" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 436 (1992).

In this case, by both his words and conduct, plaintiff manifested unequivocal assent to the settlement. His legally binding admission in response to the seventh Notice to Admit concedes that he authorized the $45,000 settlement on the day of trial. He did so after being advised, repeatedly, of the significant liability issue due to his failure to report that he had been struck by a hit-and-run vehicle to anyone in the immediate aftermath of the incident.

Although the settlement was not placed on the record, the central issue is whether plaintiff received appropriate advice about the liability issue in his case before choosing to settle. See Puder, 183 N.J. at 437-38. Indisputably, the advice was appropriate, as conceded by plaintiff's counsel at oral argument.

A-0321-20

Under analogous facts, in Newell v. Hudson, we upheld the dismissal of a plaintiff's claim against her former matrimonial attorney alleging that the attorney's failure to conduct adequate discovery "resulted in her 'accept[ing] a settlement which was woefully insufficient in terms of both alimony/spousal support and equitable distribution.'" 376 N.J. Super 29, 34 (App. Div. 2005). Puder, citing Newell with approval, explained:

> [a]s we do in this case, the Newell panel also found Ziegelheim to be distinguishable because, unlike the plaintiff in Ziegelheim, the Newell plaintiff was not "misinformed of the criteria to be employed or was [not] without full knowledge of the attendant facts prior to adopting" the settlement. Id. at 46. To the contrary, the plaintiff in Newell was completely aware of the alleged financial shortcomings of the settlement when she willingly entered into the agreement. Ibid. . . .
>
> Like the plaintiff in Newell, Mrs. Buechel's knowing and voluntary acceptance of a settlement that she stated was a fair compromise bars her from proceeding with her malpractice claim.

Similarly, plaintiff's words and conduct show he knew his case was weak and that voluntary settlement was likely the best outcome he could expect. His belated dissatisfaction with the amount of the settlement is no basis for a malpractice claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12