**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1727-17T2

ADRIAN ROMERO,

     Plaintiff-Appellant,

v.

OXFELD COHEN, PC, and
THE ESTATE OF BENJAMIN
A. SPIVACK, ESQ.,

     Defendants-Respondents.

_____

Submitted December 6, 2018 – Decided April 15, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-2163-14.

Roper & Thyne, LLC, attorneys for appellant (Angela M. Roper and Kenneth S. Thyne, on the briefs).

Riker Danzig Scherer Hyland & Perretti LLP, attorneys for respondents (Lance J. Kalik, of counsel and on the brief; Anne M. Mohan, on the brief).

PER CURIAM

Plaintiff Adrian Romero appeals from the February 27, 2017 order of the Law Division granting partial summary judgment to defendants Oxfeld Cohen, PC (Oxfeld Cohen) and the Estate of Benjamin A. Spivack, Esq. (Spivack) in this legal malpractice action. We affirm.

I.

Romero was hired by the Morris County Prosecutor's Office as an investigator/detective in 1990. His duties included undercover work on drug investigations. For the bulk of his employment, Romero's work was exemplary and he received several commendations from his employer. However, Romero admits that he began using heroin in April 2002, and that his habit grew to as much as eight to ten bags of the drug per day.

On September 24, 2002, Romero went to an area of Elizabeth known for drug-related activity with the intention of purchasing heroin for personal use. Elizabeth police officers stopped Romero and questioned him. In the course of their exchange, the officers discovered Romero's law enforcement identification. He told the officers that he was acting in an undercover capacity and was looking for a confidential informant. These statements were false. The officers released him.

The following day, supervisors at the Prosecutor's Office learned of Romero's encounter with Elizabeth police and questioned him. He admitted he was addicted to heroin and that he lied to the police officers. He was immediately fired. That same night, Romero was admitted to a hospital for opiate detoxification. As a result of his termination, contributions from the Prosecutor's Office on Romero's behalf to the Police and Firemen's Retirement System (PFRS) were terminated as of September 30, 2002.

On October 7, 2002, Romero retained Oxfeld Cohen to represent him in obtaining disability retirement benefits. Spivack was an attorney at the firm who, along with others, represented Romero. They arranged for Romero to be examined by a psychiatrist, who diagnosed him with post-traumatic stress disorder and opined that he was totally and permanently disabled from employment as a detective. The psychiatrist determined that Romero's condition arose from "traumatic experiences at work (seeing people who killed themselves or killed by others)." This is a reference to Romero's discovery of a gruesome suicide victim while working as a patrol officer at Greystone Park Psychiatric Hospital (Greystone) in 1996 and his witnessing a mother and sister identify a teenage murder victim while working for the Prosecutor's Office in January 2002.

A-1727-17T2

On November 15, 2002, Romero applied for ordinary disability retirement benefits effective November 1, 2002, relying on the psychiatrist's diagnosis. Oxfeld Cohen submitted Romero's application to the Prosecutor's Office, along with the employer's certification. Oxfeld Cohen asked the Prosecutor's Office to complete the certification and forward it, along with the remainder of Romero's application, to PFRS.

The Prosecutor's Office did not complete the employer's certification until March 10, 2003, stating in the certification that Romero had been terminated on September 25, 2002. On April 10, 2003, the Prosecutor's Office supplemented its response in a letter to PFRS stating that Romero "was terminated as a result of criminal activity committed while on duty as an investigator with the Morris County Prosecutor's Office." The letter noted that Romero was under investigation by the Attorney General's Office and that a grand jury presentation was expected. On April 29, 2003, PFRS notified Romero that his application would be held until conclusion of the grand jury investigation and disposition of all criminal charges.

On July 8, 2004, while his ordinary disability retirement application was pending, Romero waived indictment and pleaded guilty to hindering apprehension or prosecution by giving false information to a law enforcement

officer in violation of N.J.S.A. 2C:29-3(b)(4), a fourth-degree crime. Romero was sentenced to probation and forfeited any rights to his position with the Prosecutor's Office. Romero also agreed to "be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions, pursuant to N.J.S.A. 2C:51-2d" because his criminal offense involved or touched on his public office.

On January 31, 2005, PFRS sent Romero a letter stating he was ineligible for ordinary disability retirement benefits because he was not a member of the pension system "in service" at the time of his application. N.J.S.A. 43:16A-6. After a request by Oxfeld Cohen to reconsider its decision and correct factual errors in the January 31, 2005 letter, PFRS issued a "corrected" letter dated April 12, 2005, again denying Romero's application for ordinary disability retirement benefits because he was not a member of the pension system "in service" at the time of his application.

Romero's application was brought before the PFRS Board of Trustees (Board), which issued a July 12, 2005 decision. The Board determined that Romero was not a member "in service" at the time he filed his application and was, therefore, ineligible for ordinary disability retirement benefits. In addition, the Board considered whether any portion of Romero's service and salary credits

5

should be forfeited for dishonorable service for purposes of deferred retirement benefits. After applying the test established in N.J.S.A. 43:1-3(c) and Uricoli v. Bd. of Trs., Police and Firemen's Ret. Sys., 91 N.J. 62, 77 (1982), the Board determined that Romero's conduct involved a high degree of moral turpitude and touched on his office, warranting forfeiture of all of his service and salary credits from 1987, when he started work at Greystone, to 2002, because of dishonorable service. Oxfeld Cohen thereafter filed an appeal challenging the Board's determination.

The matter was transferred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). A hearing was delayed for a number of reasons, including Romero's arrest in Florida on drug-related charges, and his subsequent incarceration. After the hearing, at which Romero was the only witness, an ALJ issued a written decision dated October 20, 2011, in which she concluded that he provided dishonorable service only from April 2002 to his termination in September 2002. The ALJ, therefore, found that total forfeiture of his service and salary credits was not warranted, and that a partial forfeiture of service and salary credits for that period was appropriate. The ALJ did not address whether Romero was "in service" at the time of his application for ordinary disability benefits.

6

On January 10, 2012, the Board issued a decision rejecting the ALJ's initial decision and concluding that the forfeiture of all of Romero's service and salary credits was warranted. The Board's decision included written notice of Romero's right to appeal to this court, but did not state that he could withdraw the contributions he made to the pension system during his employment.

On January 18, 2012, Oxfeld Cohen wrote to Romero informing him of his right to file an appeal of the Board's decision and notifying him that the firm would require a retainer of $2500 to file an appeal. Romero elected not to file an appeal for financial reasons.

On June 18, 2014, Romero filed a complaint in the Law Division against Oxfeld Cohen and Spivack alleging legal malpractice and related claims. Romero alleged defendants caused him damage when they failed to: (1) advise him at the time of his termination that he could apply for workers' compensation benefits; (2) properly appeal the denial of his application for ordinary disability retirement benefits; and (3) notify him that he could withdraw or take a loan against his pension contributions in order to pay for an appeal of the Board's January 10, 2012 decision. Romero's September 12, 2014 amended complaint named Spivack's estate as a defendant. Oxfeld Cohen filed a counterclaim against Romero for $8115 in unpaid legal fees.

Following two motions to compel production of his expert report, and on the day before the final day of an extended discovery period, Romero produced the expert report of Samuel M. Gaylord, an attorney. Gaylord opined that Oxfeld Cohen and Spivack committed legal malpractice because they did not advise Romero: (1) of his right to seek workers' compensation benefits, which would have resulted in the award of temporary disability benefits, coverage for medical care, and a monetary award for his compensable injury; (2) to appeal his termination in 2002 so that he would be a member "in service" at the time that his application for ordinary retirement benefits was filed, or to seek his reinstatement solely for the purpose of pursuing disability benefits; and (3) to withdraw or take a loan against his pension contributions to pay for an appeal of the Board's January 10, 2012 decision.[1]

On October 21, 2016, defendants moved for summary judgment. They argued that Romero's claims should be dismissed because he cannot establish that their conduct was inconsistent with professional standards or was the proximate cause of injury to him. They argued that: (1) at the time defendants

---

[1] Gaylord also opined that defendants failed to advise Romero that he could withdraw his pension contributions for his own benefit. Romero did not allege such a claim in the amended complaint, did not raise the issue before the trial court, and does not address it in his brief before us.

knew or should have known Romero had a potential workers' compensation claim his claim was time barred; (2) Romero was unable to establish that he suffered a compensable work-related injury for workers' compensation purposes; and (3) the opinion of Romero's expert is an inadmissible net opinion.

In opposition to the motion, Romero submitted a supplemental certification of his expert. Although a trial date had been scheduled prior to the filing of the motion, the supplemental certification was not accompanied by a statement demonstrating exceptional circumstances warranting an extension of discovery. See R. 4:24-1(c). After oral argument on defendants' motion, Romero submitted a second supplemental certification of his expert, also not accompanied by a statement of exceptional circumstances.

On February 27, 2017, the trial court issued a written decision. The court began its analysis by precluding consideration of the two supplemental certifications. The court determined that the certifications were submitted beyond the discovery end date and in violation of Rule 4:17-7. The court, therefore, decided defendants' motion based only on Gaylord's original report.

The trial court denied defendants' motion for summary judgment with respect to Romero's claim that they failed to advise him to file a workers' compensation claim. The court concluded that Gaylord's opinion on this point

was supported by medical records, other documents, statutes, and legal precedents in his report. The trial court also denied defendants' summary judgment motion on their counterclaim for unpaid legal fees. The court found numerous disputed issues of material fact existed with respect to nature of the fee arrangement between defendants and Romero.

The remainder of defendants' motion was granted. The court concluded that Gaylord's opinion that defendants committed malpractice when they failed to advise Romero to appeal his termination or seek reinstatement was based only on his personal opinion. Because Gaylord cited no legal authority establishing that taking those steps was the accepted professional standard in such circumstances, the court determined that his opinion on this point was an inadmissible net opinion. The court also noted that the Board forfeited all of Romero's salary and service credits because it found his service to be dishonorable. Thus, the court found preservation of his "in service" status would not have changed the outcome. In addition, the court concluded that Gaylord offered no support for his opinion that the Prosecutor's Office, which supported the filing of criminal charges against Romero, would have been amendable to reinstating him solely to permit him to pursue disability benefits.

The court also concluded that Gaylord's opinion that proper representation by Oxfeld Cohen would have resulted in Romero receiving a deferred or ordinary disability retirement benefit was an inadmissible net opinion. In particular, the court noted that Gaylord offered no opinion that success was likely on appeal from the Board's decision forfeiting all of Romero's service and salary credits. Thus, the court concluded that Gaylord's opinion on this point did not establish harm to Romero.

Finally, the court found Gaylord's opinion with respect to defendants' failure to advise Romero to withdraw or borrow against his pension contributions to pay for an appeal of the Board's decision to be a net opinion. As noted above, the court concluded that Gaylord offered a net opinion that Romero would have been successful on appeal. Thus, the court found Gaylord could not opine that defendants' failure to advise Romero to withdraw or borrow against his contributions to file an appeal caused him harm.

On February 27, 2017[2], the trial court entered an order. The typewritten order states that defendants' motion is granted and that all of Romero's claims are dismissed with prejudice. Both of those statements, however, appear below

---

[2] Although the body of the order is dated February 27, 2016, it is stamped filed on February 27, 2017, the date on which the trial court issued its written opinion. The date in the body of the order appears to be typographical error.

the stamped word "DENIED." Despite these contradictory provisions of the February 27, 2017 order, the parties agree that the order was intended to grant defendants' motion in part, deny their motion in part, and dismiss some, but not all, of Romero's claims.

Romero moved for reconsideration of the February 27, 2017 order, arguing that the trial court erred in failing to consider Gaylord's supplemental certifications. On April 28, 2017, the trial court denied Romero's motion.

The parties thereafter settled Romero's claims relating to defendants' failure to advise him to seek workers' compensation benefits and defendants' counterclaim for unpaid fees. On November 14, 2017, the trial court entered an order dismissing those claims.

This appeal followed. Romero argues that the trial court erred when it: (1) declined to consider Gaylord's supplemental certifications; and (2) dismissed his malpractice claims because Gaylord offered a net opinion.

## II.

We turn first to the trial court's decision to exclude the expert's supplementary certifications. We "normally defer to a trial court's disposition of discovery matters . . . unless the court has abused its discretion[.]" Connolly v. Burger King Corp., 306 N.J. Super. 344, 349 (App. Div. 1997) (quoting

12

Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). This standard applies to a trial court's decision to preclude certifications presenting information not disclosed during discovery in response to a motion for summary judgment, Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 17 (App. Div. 1989), and to amendments to interrogatory answers, Bender v. Adelson, 187 N.J. 411, 428 (2006), both of which are arguably applicable here.

An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quotation omitted). "Under this standard, 'an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 362 (App. Div. 2014) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

After reviewing the record in light of these precedents, we are convinced that it was within the trial court's discretion to exclude the expert's supplemental certifications. Romero produced Gaylord's report one day before the end of the extended discovery period, the third deadline set by the court for production of the report. It is evident that the supplemental certifications are intended to fill

13

gaps in Gaylord's report with respect to the support for his opinion. The certifications did not identify newly discovered evidence not available during the discovery period. Sholtis, 238 N.J. Super. at 16-17. Nor did Romero demonstrate exceptional circumstances warranting what was, in effect, an amendment of the expert's report after the close of discovery.

Turning to the February 27, 2017 order, we review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529-30 (1995)).

Assertions that are unsupported by evidence "[are] insufficient to create a genuine issue of material fact." Miller v. Bank of Am. Home Loan Servicing, LP, 439 N.J. Super. 540, 551 (App. Div. 2015) (alteration in original) (quoting Heyert v. Taddese 431 N.J. Super 388, 414 (App. Div. 2013)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523.

In order to establish legal malpractice, a plaintiff must demonstrate: (1) the existence of a duty; (2) breach of the duty; (3) proximate causation; and (4) actual damages. Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996); Albright v. Burns, 206 N.J. Super. 625, 632 (App. Div. 1986). Damages must be based on real and substantial harm, and not speculation, conjecture, or suspicion. Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982).

An expert report establishing a deviation from the standard of care for an attorney is necessary to establish legal malpractice, unless an attorney's duty to a client is so basic that it may be found by the court as a matter of law. Buchanan

A-1727-17T2

v. Leonard, 428 N.J. Super. 277, 288-89 (App. Div. 2012). The expert must base his or her opinion on standards accepted in the legal community. Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 79 (App. Div. 2007).

N.J.R.E. 703 requires an expert to ground his or her opinion in facts or data derived from: (1) the expert's observations; (2) evidence admitted at trial; or (3) data of "the type . . . normally relied upon by experts" in the relevant field. Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). While an expert must ground his or her opinion in fact, the opinion's evidential support is not limited to admissible evidence and may be based on information the expert learned through personal experience. Rosenberg v. Travorath, 352 N.J. Super. 385, 400 (App. Div. 2002) (citing Bellardini v. Krikorian, 222 N.J. Super. 457, 463 (App. Div. 1988)).

However, an expert may not provide the trial court with a "mere net opinion." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). Our Supreme Court described the net opinion rule as a logical extension of N.J.R.E. 703. See e.g., Townsend, 221 N.J. at 53 (quoting Polzo, 196 N.J. at 583); Davis v. Brickman Landscaping, Inc., 219 N.J. 395, 410 (2014); see also Buckelew v. Grossbard, 87 N.J. 512, 524 (1981) ("The 'net opinion' rule appears

16

to be a mere restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, is inadmissible").

The rule requires an expert to "give the why and wherefore" of his or her opinion. Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz, 207 N.J. at 372). In other words, an opinion consisting of "bare conclusions" or speculative hypotheses "unsupported by factual evidence" is inadmissible. Rosenberg, 352 N.J. Super. at 401. This court has noted an expert who speculates "ceases to be an aid to the trier of fact and becomes nothing more than an additional juror." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996).

Having carefully reviewed Romero's arguments in light of the record and applicable legal principles, we affirm the trial court's grant of summary judgment to defendants. Gaylord's report is noticeably devoid of legal citations supporting his opinion. He offers no support for what he describes as accepted standards of practice for attorneys. Nor does he cite legal authority for his opinion that proper representation by defendants would have resulted in the Board awarding Romero deferred or ordinary disability retirement benefits.

As noted above, the Board forfeited all of Romero's service and salary credits based on its application of the factors set forth in N.J.S.A. 43:1-3(c) and

<u>Uricoli</u>, 91 N.J. at 77-78. Yet, Gaylord does not even mention these controlling authorities, let alone explain how the Board's finding of dishonorable service would have differed, or successfully been challenged on appeal, had defendants advised Romero differently.

In addition, Gaylord does not address the fact that Romero agreed, as part of his plea bargain, to forfeit any rights he had to his position at the Prosecutor's Office, and to be barred forever from holding public office in this State. N.J.S.A. 43:16A-8(2) provides that any beneficiary under the age of fifty-five who has been retired on a disability retirement allowance shall submit to a medical examination once a year for at least five years following retirement to determine whether or not the disability "has vanished or has materially diminished." If the beneficiary is found to be fit to return to his prior position, or any other position the employer is prepared to give him, he must return to active duty. N.J.S.A. 43:16A-8(2). "The purpose of this legislation is to return the previously disabled employee to work as if the officer had never been disabled and the officer's service had never been interrupted." <u>In re Terebetski</u>, 338 N.J. Super. 564, 570 (App. Div. 2001).

We recently held that a member of PFRS who resigns voluntarily and irrevocably from active service is not eligible for ordinary disability benefits

because he cannot return to service if his disability vanishes or materially diminishes in accordance with N.J.S.A. 43:16A-8(2). <u>Cardindale v. Bd. of Trs., Police and Firemen's Ret. Sys.</u>, ___ N.J. Super. ___ (App. Div. Mar. 1, 2019). The same is true for a PFRS member, like Romero, who has forfeited his right to hold public office as part of a plea agreement to resolve criminal charges for conduct that touches on his office.

To the extent we have not specifically addressed any of Romero's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1727-17T2