**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2014-16T1

W. JAMES MAC NAUGHTON,

    Plaintiff-Appellant,

v.

SHAI HARMELECH, USA
SATELLITE & CABLE, INC.,
CABLE AMERICAN, INC., and
NORTH AMERICAN CABLE
EQUIPMENT COMPANY, INC.,

    Defendants-Respondents,

and

RUSSIAN MEDIA GROUP, LLC,

    Defendant.

_____

          Argued April 30, 2018 — Decided August 9, 2018

          Before Judges O'Connor and Vernoia.

          On appeal from Superior Court of New Jersey,
          Law Division, Sussex County, Docket No. L-
          0442-12.

          W. James Mac Naughton, appellant, argued the
          cause pro se.

          Lynette Siragusa argued the cause for
          respondents Shai Harmelech, USA Satellite &
          Cable, Inc., and Cable America, Inc.

(Siragusa Law Firm, LLC, attorneys; Lynette
Siragusa, of counsel and on the brief;
Robert D. Bailey, on the brief).

Joseph D. Cronin argued the cause for
respondent North American Cable Equipment
Company, Inc. (The Cronin Firm, attorneys;
Joseph D. Cronin and Benjamin E. Smith, on
the brief).

PER CURIAM

Plaintiff W. James Mac Naughton appeals from a December 22, 2016 order granting summary judgment to defendants Shai Harmelech, USA Satellite & Cable, Inc., and Cable America, Inc.[1] We affirm.

I

Plaintiff, an attorney, represented defendants in litigation in the United States District Court for the Northern District of Illinois in 2009. Harmelech is the president of Cable America, Inc., and vice president of USA Satellite & Cable, Inc. Defendants fell behind on the payment of plaintiff's fees and, as a result, in August 2009, the parties executed a promissory note and security agreement. The security agreement states in pertinent part:

---

[1] On October 12, 2016, the court dismissed the complaint against defendant North American Cable Equipment, Inc., with prejudice; plaintiff does not appeal from that order. In 2014, plaintiff settled and dismissed his complaint against defendant Russian Media Group, LLC. The term "defendants" in this opinion refers only to the remaining defendants, unless stated otherwise.

As security for performance of the obligation, [defendants] give[] [plaintiff] a security interest in all of the [defendants'] right, title, and interest in any and all real or personal property wherever located (the "Property). [Defendants] authorize[] [plaintiff] to sign [defendants'] name to any UCC-1 or other documents reasonably necessary to perfect the security interest in the Property. . . .

[Defendants] will not sell, lease or otherwise transfer the Property nor allow anyone else to obtain a security interest or line upon it during the term of this Security Agreement.

Defendants did not pay in accordance with the terms of the promissory note. Defendants asserted plaintiff's purported security interest was meaningless as a matter of law and, thus, plaintiff did not in fact have an interest in their property. In response, in October 2009, plaintiff filed an action in the United States District Court for the District of New Jersey to collect his unpaid fees, which were approximately $66,000. In the fourth count of that complaint, plaintiff sought a judgment declaring his security interest in defendants' property valid.

Defendants moved to dismiss the complaint on the ground it failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On September 22, 2010, District Judge Peter G. Sheridan held the parties' August 12, 2009 agreement did not create a security interest in either defendants' real or

3

personal property. Judge Sheridan explained that the description of the collateral in the agreement was "supergeneric" and, for that and other reasons, dismissed the fourth count of the complaint.

In his second amended complaint[2], plaintiff included a count that sought reformation of the language in the security agreement. In that count, plaintiff acknowledged Judge Sheridan had ruled he did not have a security interest in defendants' real or personal property and that the "effect of these rulings is that plaintiff does not have the enforceable 'secured promissory note' the parties agreed to on August 11, 2009." However, plaintiff alleged the defective description of the property in the original agreement was a mutual mistake, and sought reformation of the security agreement "nunc pro tunc to express the parties' intention that defendants have pledged all of their personal and real property as security for payment of their obligations to [me] and that [I] may enforce that security interest by all available legal means. . . ."

While the action was still pending and the question of whether he was entitled to reformation of the security agreement remained unresolved, on June 20, 2011, plaintiff created and

_____

[2]  For reasons unnecessary to detail, after filing a first amended complaint, defendants consented to plaintiff filing a second amended complaint.

4

executed his and defendants' signatures to an amended security agreement. The new agreement states plaintiff has an interest in various properties, which are described in more detail than in the original agreement. Plaintiff maintained the amended security agreement cured the "supergeneric" defect found by Judge Sheridan.

Significantly, according to the amended security agreement, plaintiff acquired an interest in any judgments USA Satellite & Cable, Inc. (USA) obtained against North American Cable Equipment, Inc., (North American). Plaintiff inserted such language into the amended security agreement because he had become aware USA had or was about to recover a judgment from North American. Plaintiff wanted to recover this asset, a form of personal property, from USA in order to pay down defendants' debt.

Plaintiff believed he had the authority to create and execute defendants' signatures to the amended security agreement because the original security agreement included the following language: "[Defendants] authorize[] [plaintiff] to sign [defendants'] name to any UCC-1 or other documents reasonably necessary to perfect the security interest in the Property . . . ."

5

The amended security agreement includes similar language, and also states the "description" of the property in the amended security agreement perfects plaintiff's interest in defendants' property. The amended security agreement states:

> [Defendants] agree[] and understand[] that the . . . amended description is reasonably necessary to perfect [plaintiff's] security interest in the Property and [defendants] ha[ve] therefore authorized [plaintiff] to sign [defendants'] name to this [amended agreement]. . . .
>
> Except as expressly modified herein, the Promissory Note and Security Agreement dated August 12, 2009 continues in full force and effect.

Months later, plaintiff filed a motion for leave to file a third amended complaint to add a count permitting him to enforce the amended security agreement, so that he could "take possession of all of [defendants'] property [as] described in the . . . amended security agreement." On March 30, 2012, District Judge Esther Salas issued an opinion denying plaintiff's motion.

Judge Salas observed plaintiff's claim was based on his assertion he had the right to unilaterally amend the original security agreement, but that plaintiff "failed to direct this court to any case law in support of his contention that he is

6

entitled to unilaterally amend the central agreement[,] . . . much less after that agreement has been deemed invalid."

The judge further commented that Judge Sheridan had "already found the Security Agreement to be invalid and any efforts to change the terms of that agreement to circumvent this court's ruling flies in [the] face of notice, fair play, and finality." However, given the nature of the motion, Judge Salas ultimately declined "to take a position on the validity of this legal theory." She denied the motion on procedural grounds, finding plaintiff "acted with undue delay, bad faith, and [that] such an amendment would place undue burden on defendants." Plaintiff did not seek leave to file any additional complaints in the federal action, making the second amended complaint the final, operative complaint in that action.

When Judge Salas denied his motion for leave to file a third amended complaint, plaintiff filed a complaint in the Law Division. The only relief he sought in that complaint was an order declaring he had a "duly perfected security interest in all of defendants' property as described in the . . . amended security agreement. . . ." However, that Law Division complaint was amended three times. The third amended complaint, the last complaint filed in the Law Division, does not seek the relief plaintiff requested in his original complaint.

7

The third amended complaint alleges that: (1) defendants breached the amended security agreement by assigning certain assets to third parties; (2) defendant Harmelech tortiously interfered with plaintiff's contractual rights by directing USA to assign the North American judgment to a third party; and (3) defendants' assignment of the North American judgment to the third party constituted a conversion of plaintiff's property.

Meanwhile, the federal action proceeded simultaneously with the action filed in the Law Division. In 2016, plaintiff filed a motion in the federal action seeking summary judgment on the count in his second amended complaint that sought reformation of the language in the original security agreement that Judge Sheridan had found invalid. Defendants crossed moved to dismiss such count.

In that motion, plaintiff argued the subject language in the original agreement was the result of a unilateral mistake, see St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 577 (1982) (noting the grounds justifying reformation of an instrument are either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other).

For reasons we need not detail here, Judge Kevin McNulty rejected plaintiff's claim the language in the original

8

agreement was the result of a unilateral mistake, and determined the language could not be reformed. Among other things, the judge found, "[plaintiff] drafted this security agreement and pressed it upon defendants; the responsibility for its defects is his, and he cannot show that the equities tip in his favor." The judge granted defendants' motion for partial summary judgment and entered an order dismissing the count seeking reformation of the original security agreement. Plaintiff did not appeal from Judge McNulty's order.

Months later, defendants prevailed on a motion for summary judgment in the Law Division. The court entered an order on December 22, 2016 dismissing the complaint against defendants with prejudice. It is this order plaintiff challenges on appeal.

In their motion for summary judgment in the Law Division, defendants pointed out that Judge Sheridan had found the original security agreement invalid, because the description of the property in such agreement was so defective it failed to convey to plaintiff an interest in any of defendants' property. Defendants also noted Judge McNulty subsequently determined the defective language in the original agreement could not be reformed. Defendants argued the <u>amended</u> security agreement is also invalid because, although the description of the property

9

in such agreement is more detailed, Judge McNulty's ruling precluded plaintiff from reforming the language in the original security agreement.

Defendants also noted - and plaintiff did not deny - that he had stated in a letter to defense counsel that Judge McNulty's decision "is binding on the parties in [the Law Division] and adjudicates all of the issues arising out of the same facts."

In his opposition to defendants' summary judgment motion, plaintiff did not dispute that, as a result of Judge Sheridan's ruling, the language in the original security agreement failed to provide him with an interest in defendants' property. However, he contended the other terms in the original security agreement were still valid and, because the original agreement allegedly gave him the authority to change such document, the amended agreement he created is valid.

Plaintiff also argued Judge McNulty did not rule upon his ability to create the amended security agreement and thus such agreement exists and is binding. That is, plaintiff contends the federal court neither adjudicated nor ruled he did not have the authority to unilaterally change the original agreement.

The Law Division judge determined Judge McNulty essentially found the amended agreement unenforceable, and that such

10

decision is binding pursuant to the doctrine of collateral estoppel, see In re Estate of Dawson, 136 N.J. 1, 20 (1994), thereby precluding re-litigation of such issue. The Law Division judge reasoned that, because the amended security agreement does not give plaintiff a security interest in defendants' property and the claims plaintiff asserts in the third amended complaint depend upon the agreement's validity, plaintiff's claims fail as a matter of law.

II

On appeal, plaintiff asserts the following arguments for our consideration:

> POINT A: JUDGE MCNULTY DID NOT SPECFICALLY HOLD THE AMENDED [SECURITY AGREEMENT] WAS INVALID.
>
> POINT B: JUDGE MCNULTY DID NOT HAVE JURISDICTION TO RULE THE AMENDED [SECURITY AGREEMENT] WAS INVALID.
>
> POINT C: THE DISMISSAL OF THE REFORMATION CLAIM DOES NOT COLLATERALLY ESTOP THE AUTHORITY CLAIM BECAUSE THE TWO CLAIMS ARE NOT IDENTICAL.
>
> POINT D: IT WOULD BE UNFAIR TO COLLATERALLY ESTOP PLAINTIFF'S CLAIMS ARISING OUT OF THE [SECURITY AGREEMENT].
>
> POINT E: PLAINTIFF'S CLAIMS BASED ON THE NON-ASSIGNMENT CLAUSE CANNOT BE BARRED BY INVALIDATING THE [SECURITY AGREEMENT].

11

We review a trial court's decision on summary judgment "de novo, employing the same standard used by the trial court." Tarabokia v. Structure Tone, 429 N.J. Super. 103, 106 (App. Div. 2012) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). However, we give "no deference to the trial judge's conclusions on issues of law." DepoLink Court Reporting & Litig. Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013). We also "view the evidence in the light most favorable to the non-moving party and analyze whether the moving party was entitled to judgment as a matter of law." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995)).

After reviewing the record, the parties' arguments, and the applicable legal principles, we conclude plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). However, we make the following comments.

As found by Judge McNulty, the language in the original security agreement that purportedly gave plaintiff an interest in defendants' property was not amenable to being altered or reformed. Therefore, even if the original security agreement gave plaintiff the authority to unilaterally change the terms of

12

such agreement, as a matter of law Judge McNulty's decision precludes him from doing so.

Further, we reject as unsupported the premise the original security agreement provided plaintiff license to change its terms. That agreement authorized plaintiff to sign defendants' name to any UCC-1 or other document reasonably necessary to perfect the security interest in the property as defined by such agreement. However, Judge Sheridan found the definition of property in the original agreement too indefinite to be binding; therefore, the property in which plaintiff can perfect a security interest cannot be ascertained under the terms of the original security agreement.

Last, plaintiff's authority to sign documents is limited to signing those which are reasonably necessary to perfect his security interest in the property defined by the original security agreement, not alter the terms of the original agreement and to unilaterally define the property in which plaintiff has a security interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13